PAT GORDON *et al.*, Plaintiffs-Appellees, v. EDWARD BODEN, SR., *et al.*, Defendants (Edward Boden, Sr., *et al.*, Defendants-Appellants).

First District (4th Division)   Nos. 1—90—3609, 1—90—3610 cons.

Opinion filed December 26, 1991.

Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Harold C. Wheeler and Kathleen M. Dillon, of counsel), for appellant Bodine's, Inc.

Righeimer, Martin & Cinquino, P.C., of Chicago (David A. Martin and Sandra L. Hebenstreit, of counsel), for appellants Edward Boden, Sr., and Edward Boden, Jr.

Daniel A. Edelman and Lawrence Walner & Associates, Ltd., both of Chicago (Lawrence Walner, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:
Plaintiffs Pat Gordon, Sam Gordon, Catherine Thomas, and other named plaintiffs brought a class action in the circuit court of Cook County. Plaintiffs represent a nationwide class of consumers who bought adulterated orange juice products that were processed by defendant Bodine's, Inc. Bodine's corporate officers were defendants Edward Boden, Sr., and Edward Boden, Jr.

The trial court granted plaintiffs' motion for class certification. The court also certified a question for review that pertains to the assessment and distribution of damages among class members.

We affirm the order of the trial court in all respects.

BACKGROUND
The record shows that in July 1989, the Bodens and Roger Walsh, Jr., were charged in a multicount Federal indictment with selling adulterated food. As part of a plea agreement, they pled guilty to some of the charges. On February 27, 1990, the United States District Court for the Northern District of Illinois sentenced each of the Bodens to a prison term, a fine, and community service. (Walsh was sentenced the preceding week.)

On the day that the Bodens were sentenced in Federal court, plaintiffs filed their third amended complaint in Cook County circuit court. The pleading alleged as follows. Until 1985, Bodine's, Inc. (now known as McCain's OJ), was the largest processor of frozen orange juice in the Midwest. Bodine's corporate officers were the Bodens and Walsh. Defendants processed orange juice products, i.e., 100% orange juice, orange juice from concentrate, and frozen orange juice.

Between 1978 and 1985, defendants adulterated these orange juice products "with up to 40% beet sugar, corn sugar, monosodium glutamate, and other low-cost inferior ingredients." Despite the adulteration, defendants knowingly affixed false labels to its product containers, representing that the products were processed from 100% orange juice. The complaint also named as defendants several retail grocery chains that bought the adulterated orange juice products from Bodine's and resold them to consumers. Plaintiffs also alleged that defendants intentionally concealed the adulteration from consumers.

Based on the foregoing acts, plaintiffs' six-count complaint sought damages under the following theories: breach of express warranty and implied warranty of merchantability (see Ill. Rev. Stat. 1989, ch. 26, pars. 2—313, 2—314), statutory fraud (see Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*), common law fraud, and violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) (see 18 U.S.C. §1961 *et seq.* (1988)).

On December 7, 1990, the trial court entered an order pertaining to several matters in the litigation. The court dismissed from the action the retail grocery chains. The court certified the following class:

> "All persons in the United States who purchased at retail adulterated orange juice products manufactured or sold by Bodines, Inc., other than the defendants. The defendants remaining in the case are Edward Boden, Sr., Edward Boden, Jr., and Bodines, Inc."

The trial court also certified the following question for review:

> "[W]hether what is commonly known as 'fluid recovery' (various mechanisms involving the assessment of damages to the class as a whole followed by its distribution in the manner most likely to result in benefit to the injured population) is permissible in a class action in Illinois."

The court found that the use of fluid recovery would substantially facilitate and expedite the litigation. The court also found that "the recoveries of hundreds of thousands or millions of class members" would likely be defeated if the procedure were not permissible. We granted leave to appeal. See 134 Ill. 2d R. 308.

OPINION

I

The parties initially disagree as to this court's scope of review. Plaintiffs contend that we must restrict our review solely to the precise question certified by the trial court. Defendants, however, contend that we may review the trial court's order granting class certification. It is true that a reviewing court generally should limit an interlocutory appeal under Supreme Court Rule 308 (134 Ill. 2d R. 308) to the question certified by the trial court. (*People v. Pollution Control Board* (1984), 129 Ill. App. 3d 958, 965, 473 N.E.2d 452, 456-57.) However, it is settled that a trial court may use Rule 308 as a means of reviewing an order granting class certification at an early stage of the litigation. *Frank v. Teachers Insurance & An-*

*nuity Association of America* (1978), 71 Ill. 2d 583, 590-91, 376 N.E.2d 1377, 1379-80.

■ In the case at bar, we conclude that the certified question, which pertains to the assessment and distribution of damages among class members in general, necessarily includes the question of the propriety of the class certification in the present case. We cannot neatly compartmentalize and independently resolve one issue and not the other. (See *Frank*, 71 Ill. 2d at 592, 376 N.E.2d at 1380.) Therefore, we will answer the certified question in the course of reviewing the class certification.

## II

■ Section 2—801 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—801), formerly section 57.2 of the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 57.2), governs class actions in Illinois. For an action to be maintained as a class action, a trial court must find four prerequisites: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class which predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. Ill. Rev. Stat. 1989, ch. 110, par. 2—801.

The class action statute essentially codifies Illinois case law. (*Hoover v. May Department Stores Co.* (1978), 62 Ill. App. 3d 106, 114, 378 N.E.2d 762, 769, *rev'd on other grounds* (1979), 77 Ill. 2d 93, 395 N.E.2d 541; K. Forde, *Illinois's New Class Action Statute*, 59 Chi. Bar Rec. 120, 135 (1977).) Thus, a court may seek guidance in pertinent cases decided prior to the statute's enactment. (*Eshaghi v. Hanley Dawson Cadillac Co.* (1991), 214 Ill. App. 3d 995, 999-1000, 574 N.E.2d 760, 763.) However, it must be remembered that "[w]ith the advent of the statute many of the prior decisions have become corpses." *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 338, 371 N.E.2d 634, 643.

In deciding whether to certify a class, a court may consider "any matters of fact or law properly presented by the record, including the pleadings, depositions, affidavits, answers to interrogatories and any evidence that may have been adduced at hearings." (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1985), 137 Ill. App. 3d 84, 100, 484 N.E.2d 349, 360-61, *aff'd* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319.) Certification of a class is

within the sound discretion of the trial court and will be disturbed only if there is an abuse of that discretion or if impermissible legal criteria are applied. *Purcell & Wardrope Chartered v. Hertz Corp.* (1988), 175 Ill. App. 3d 1069, 1074, 530 N.E.2d 994, 997.

■ Turning to the first prerequisite of section 2—801, defendants do not dispute that the class is so numerous that joinder of all members is impracticable. The trial court found that class members could potentially total in the "hundreds of thousands or millions." Obviously, any attempt to join such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts. (*Steinberg*, 69 Ill. 2d at 337, 371 N.E.2d at 642-43; *Hoover*, 62 Ill. App. 3d at 114, 378 N.E.2d at 769.) Further, as one commentator has observed:

> "In cases where there is a substantial number of potential claimants and the individual amounts of their claims are relatively small, Illinois courts have tended to permit the claims to proceed as a class action." (Forde, 59 Chi. Bar Rec. at 122.)

We hold that the first prerequisite of section 2—801 is established.

Turning to the second prerequisite of section 2—801, defendants contend that the record does not establish the existence of predominant questions of fact or law common to the class. Defendants initially assert that a successful adjudication of a class representative's individual claim would not establish a right to recovery in any other class member. Defendants posit that each class member's purchase of an adulterated orange juice product involved a unique set of facts, such as the exact type of item purchased, the particular retail grocery store where the item was purchased, the date it was purchased, the label the item bore, the purchase price, and each consumer's reliance on defendants' misrepresentations. Thus, defendants reason, each class member would be required to testify to establish a right to recovery, *i.e.*, defendants' liability. Defendants argue, therefore, that a class action cannot be maintained.

■ We cannot accept defendants' argument. Our supreme court has explained that section 2—801(2) of the class action statute "is couched in the disjunctive—'common questions of fact *or* law.' It does not, therefore, require the presence of both a common question of fact and a common question of law." (Emphasis in original.) (*Miner v. Gillette Co.* (1981), 87 Ill. 2d 7, 17, 428 N.E.2d 478, 483.) "So long as there are questions of fact or law common to the class and these predominate over questions affecting only individual

members of such class, the statutory requisite is met." *Steinberg*, 69 Ill. 2d at 338, 371 N.E.2d at 643.

We conclude that this test has been met in the case at bar. The record shows the existence of at least one question common to the class that predominates over questions affecting individual class members. That question is simply whether defendant adulterated its orange juice products and committed the other fraudulent acts as alleged. In *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 361 N.E.2d 815, we held as follows:

> "A class action can properly be prosecuted where a defendant is alleged to have acted wrongfully in the same basic manner as to an entire class. In such circumstances, the common class questions still predominate the case, and the class action is not defeated. [Citations.]" 47 Ill. App. 3d at 273, 361 N.E.2d at 820.

We further conclude that the other questions that defendants raise, pertaining to the exact circumstances of each class member's purchase, fail to show that the common question does not predominate.

The question of each class member's reliance on defendants' misrepresentation does not show that the common question does not predominate. Plaintiffs alleged, *inter alia*, that defendants violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). In *Brooks*, this court distinguished a class action that sought relief for a statutory fraud violation from a class action seeking relief under a common law fraud theory. We observed as follows:

> "Under the common law, reliance was an element which had to be alleged in order to constitute a valid cause of action for misrepresentation or deceit. [Citations.] However, the language employed in the Consumer Fraud Act clearly indicates that it is the intent of the defendant in his conduct, not the reliance or belief of the plaintiff, which is the pivotal point upon which an action arises. [Citation.] Section 2 of the Act specifically provides that the question of whether a person has been misled, deceived or damaged is not an element of an action brought under the Act. If, after trial, it is found that defendant did engage in an unlawful practice in its advertising, then the question common to all class members has been established in favor of plaintiffs." *Brooks*, 47 Ill. App. 3d at 272-73, 361 N.E.2d at 819-20.

Also, defendants contend that the common question does not predominate because each consumer paid a different price for a particular item. However, it is settled that "[t]he fact that the class members' claims for refunds may be in varying amounts which must be determined separately does not necessarily mean that the common question does not predominate." *Society of St. Francis v. Dulman* (1981), 98 Ill. App. 3d 16, 18, 424 N.E.2d 59, 61, citing *Saldana v. American Mutual Corp.* (1981), 97 Ill. App. 3d 334, 422 N.E.2d 860.

Additionally, defendants posit that the trial court would have to apply to each purchase the substantive law of the State in which each class member bought the adulterated orange juice product. Defendants contend, therefore, that the common question is governed by the substantive law of possibly 50 States and does not predominate.

We disagree. The question of whether laws of different States apply to specific transactions alleged in a class action will not ordinarily prevent certification of the class. (*Purcell*, 175 Ill. App. 3d at 1075, 530 N.E.2d at 998.) We initially note that if the trial court found that Illinois has significant contact to the claims asserted by each class member, the court could apply Illinois substantive law to this multistate class action. This finding would ensure that the application of Illinois law is neither arbitrary nor unfair. (*Martin v. Heinold Commodities, Inc.* (1987), 117 Ill. 2d 67, 82, 510 N.E.2d 840, 846-47 (and cases cited therein).) We further note that the trial court could simply divide the class into subclasses. (*Martin*, 117 Ill. 2d at 81-82, 510 N.E.2d at 846; *Miner*, 87 Ill. 2d at 17-18, 428 N.E.2d at 483-84.) "Moreover, if at some later time in the litigation the subclassification becomes unmanageable, the court, of course, always has the option to set aside the class certification or a portion of it." (*Purcell*, 175 Ill. App. 3d at 1075, 530 N.E.2d at 998.) At the most, this question constitutes a hypothetical problem that might arise in the future. As such, it is not a sufficient basis to refuse to certify an otherwise properly pleaded class action. See *Purcell*, 175 Ill. App. 3d at 1075, 530 N.E.2d at 998.

In their complaint and in their motion for class certification, plaintiffs list many questions which they claim are predominant and common to the class. We need not address each question *seriatim*. It suffices to say that plaintiffs' claim under the Consumer Fraud Act predominates and is common to the class. We note that the class action device "is flexible in nature and may be adjusted or modified by the trial court at a later point in the litigation to ac-

commodate any changes or newly discovered facts as they arise." (*Purcell,* 175 Ill. App. 3d at 1076 n.2, 530 N.E.2d at 999 n.2.) Indeed, even a subsequent "determination that some members of a class are not entitled to relief because of some particular factor will not bar the classification." *Steinberg,* 69 Ill. 2d at 338, 371 N.E.2d at 643.

We also note that defendants cite *Reardon v. Ford Motor Co.* (1972), 7 Ill. App. 3d 338, 287 N.E.2d 519, in support of their argument. In *Steinberg,* our supreme court explained that the decision in *Reardon* rested at least in part on a common law requirement for class actions that was superseded by the class action statute. The *Steinberg* court questioned the precedential value of *Reardon* (69 Ill. 2d at 339-40, 371 N.E.2d at 644) and we do likewise. We hold that the second prerequisite of section 2—801 is established.

■ Turning to the third prerequisite of section 2—801, defendants claim that the named plaintiffs will not adequately represent the class. The purpose of the adequate representation requirement is merely to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim. *Purcell,* 175 Ill. App. 3d at 1078, 530 N.E.2d at 1000; *Brooks,* 47 Ill. App. 3d at 274, 361 N.E.2d at 820.

In the case at bar, the interests of the named plaintiffs are the same as those of the absentee class members—to seek damages based on defendants' misrepresentations to consumers concerning their adulterated orange juice products. Further, the record shows that this is not a collusive action; rather, this is an adversary proceeding against defendants. If the adequacy of representation by the named plaintiffs is questioned at a later time, we repeat that the trial court could, if necessary, modify the class structure or decertify the class. (*Purcell,* 175 Ill. App. 3d at 1078-79, 530 N.E.2d at 1001.) We hold that the third prerequisite of section 2—801 is established.

■ Turning to the fourth prerequisite of section 2—801, defendants claim that a class action is not an appropriate method for the fair and efficient adjudication of the controversy. In applying this prerequisite in a particular case, a court considers whether a class action: (1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain. (Forde, 59 Chi. Bar Rec. at 128; see *Society of St. Francis,* 98 Ill. App. 3d at 19, 424 N.E.2d at 61-62.) Further, "[a] controlling factor in many cases is that the class action is the only practical means for class mem-

bers to receive redress—particularly where the claims are small."
Forde, 59 Chi. Bar Rec. at 128.

Applying these principles to the record before us, we conclude
that a class action is appropriate in the case at bar. Initially, our
holding that the first three prerequisites of section 2—801 are es-
tablished makes it evident that the fourth requirement is fulfilled.
(See *Steinberg*, 69 Ill. 2d at 339, 371 N.E.2d at 644.) Additionally, it
must be remembered that this is a consumer class action. Our
courts have recognized that, "[i]n a large and impersonal society,
class actions are often the last barricade of consumer protection."
(*Eshaghi*, 214 Ill. App. 3d at 1004, 574 N.E.2d at 766.) The con-
sumer class action is an inviting procedural device to address frauds
that cause small damages to large groups. When brought by plain-
tiffs who have no other avenue of legal redress, the consumer class
action provides restitution to the injured and deterrence to the
wrongdoer. (*Hoover*, 62 Ill. App. 3d at 112, 378 N.E.2d at 768; see
K. Ross, *Multistate Consumer Class Actions in Illinois*, 57 Chi.-
Kent L. Rev. 397, 398 (1981).) Thus, the ends of equity and justice
are attained.

Defendants vigorously argue that a class action is not appropri-
ate in the case at bar because the class is composed of a large num-
ber of unidentified individuals whose claims cannot be substanti-
ated. Defendants cite cases in which courts have held that
"insubstantial recoveries by class members, high administrative
costs in relation to aggregate recovery and difficulty in corroborat-
ing claims are valid considerations in determining whether a class
action is manageable." *Hayna v. Arby's, Inc.* (1981), 99 Ill. App. 3d
700, 712, 425 N.E.2d 1174, 1184, citing *Adams v. Jewel Cos.* (1976),
63 Ill. 2d 336, 348 N.E.2d 161.

■■ However, in the trial court's order granting class certifica-
tion, the court approved the use of fluid recovery to avoid the ex-
pected manageability problems. The term "fluid recovery" refers to
a procedural device used to avoid manageability problems in the cal-
culation and distribution of damages in large class actions. Exam-
ples of such problems are where the persons injured are not likely
to come forward and prove their claims, or where such persons can-
not be given notice of the case. (*Simer v. Rios* (7th Cir. 1981), 661
F.2d 655, 675.) The mechanism generally consists of the following
format:

> "(1) the amount of damages incurred by the class as a whole
> is determined in a single adjudication, creating a damage
> fund; (2) individual member claimants capable of proving

valid claims obtain their share of the fund; and (3) the unclaimed portion of the fund is applied to the class's benefit. [Citation.]'' (*Cicelski v. Sears, Roebuck & Co.* (1984), 132 Mich. App. 298, 304-05, 348 N.W.2d 685, 689.)

The third procedural step is the actual fluid recovery, which commonly assumes one of two forms. The remainder of the fund is: (1) distributed through the market, usually in the form of reduced charges, or (2) used to fund a project which will likely benefit class members. *Simer*, 661 F.2d at 675; *Cicelski*, 132 Mich. App. at 305, 348 N.W.2d at 689; see generally Note, *Developments in the Law— Class Actions*, 89 Harv. L. Rev. 1318, 1516-23 (1976).

■ Defendants argue that the fluid recovery mechanism violates the class action statute. Thus, according to defendants, the trial court's approval of the use of fluid recovery amounted to a *de facto* amendment of the statute. This brings us to the specific question certified by the trial court. We answer the question in the affirmative, and conclude that the fluid recovery mechanism is permissible in Illinois in appropriate cases.

Initially, we agree with other courts that the fluid recovery procedure is not inherently unconstitutional. In *Cicelski*, the Michigan Court of Appeals reviewed the several Federal cases that addressed the issue. The court agreed with a commentator that, absent issues that require individualized proofs, a defendant in a class action is not prejudiced by being restricted to only one hearing on common issues. Regarding the calculation of damages, '' 'it has never been thought that due process required multiple hearings where there was one full and fair adjudication of the merits.' '' *Cicelski*, 132 Mich. App. at 306-07, 348 N.W.2d at 690, quoting Note, 89 Harv. L. Rev. at 1524-25.

Further, the court in *Cicelski* was persuaded by the approach taken by the United States Court of Appeals for the Seventh Circuit in *Simer*. We are likewise. In *Simer*, the court held as follows:

"We need not adopt either of the two extreme positions— that is, whether a fluid recovery always can be used to surmount problems in the going forward of a class action or whether a fluid recovery is per se unconstitutional. Rather, we believe that a careful case-by-case analysis of use of the fluid recovery mechanism is the better approach. In this approach we focus on the various substantive policies that use of a fluid recovery would serve in the particular case. The general inquiry is whether the use of such a mechanism is consistent with the policy or policies reflected by the statute

violated. This matter can be more particularized into an assessment of to what extent the statute embodies policies of deterrence, disgorgement, and compensation." *Simer*, 661 F.2d at 676, quoted in *Cicelski*, 132 Mich. App. at 307, 348 N.W.2d at 690-91.

After reviewing the record before us, we conclude that fluid recovery is appropriate in the case at bar. Plaintiffs allege, *inter alia*, that defendants violated the Consumer Fraud Act. (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*) "The Act is a regulatory and remedial enactment intended to curb a variety of fraudulent abuses and to provide a remedy to individuals injured by them." (*Scott v. Association for Childbirth at Home, International* (1981), 88 Ill. 2d 279, 288, 430 N.E.2d 1012, 1017.) Section 11a of the Act provides that "[the] Act be liberally construed to effect the purposes thereof." (Ill. Rev. Stat. 1989, ch. 121½, par. 271a.) It is quite established that "[t]he provision is a clear mandate from the Illinois legislature that our courts utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties." (*People ex rel. Hartigan v. All American Aluminum & Construction Co.* (1988), 171 Ill. App. 3d 27, 33, 524 N.E.2d 1067, 1070, citing *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 495, 429 N.E.2d 1267, 1277; see *Warren v. LeMay* (1986), 142 Ill. App. 3d 550, 563, 491 N.E.2d 464, 471.) This legislative intent and mandate necessarily include policies of deterrence, disgorgement, and compensation. Thus, we hold that fluid recovery is available in at least the claim brought under the Consumer Fraud Act.

In sum, the benefits of class certification in the case at bar, with the use of fluid recovery where appropriate, outweigh the tremendous burdens presented if the case proceeded without class certification. We hold that the fourth prerequisite of section 2—801 is established. After reviewing the entire record, we cannot say that the trial court exceeded its discretion in certifying the class.

For the foregoing reasons, the order of the circuit court of Cook County is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.