ACIE C. CLARK, Indiv. and on Behalf of All Others Similarly Situated, Plaintiff-Appellee, v. TAP PHARMACEUTICAL PRODUCTS, INC., *et al.*, Defendants-Appellants.

Fifth District    No. 5—02—0316

Opinion filed October 1, 2003.

Joshua T. Buchman, of McDermott, Will & Emery, of Chicago, for appellant Abbott Laboratories, Inc.

Daniel E. Reidy and Lee Ann Russo, both of Jones, Day, Reavis & Pogue, of Chicago, for other appellants.

Robert M. Foote and Craig S. Mielke, both of Foote, Meyers, Mielke & Flowers, L.L.C., and Kathleen C. Chavez, of Chavez Law Firm, both of Geneva, and H. Barry Wesley, of Barrett, Twomey, Broom, Hughes & Wesley, of Carbondale, for appellee.

PRESIDING JUSTICE HOPKINS delivered the opinion of the court:

The defendants, TAP Pharmaceutical Products, Inc., TAP Pharmaceuticals, Inc. (collectively referred to as TAP), and Abbott Laboratories, Inc., appeal the trial court's order certifying a nationwide class of individuals and businesses under Illinois law. On appeal, the defendants seek the decertification of the class. We affirm the trial court's decision.

## FACTS

Plaintiff class representative Acie C. Clark filed a class action complaint in Williamson County. He alleged unjust enrichment and a violation of Illinois's Consumer Fraud and Deceptive Business

Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2000)). Acie alleged that, as a result of the defendants' fraudulent marketing and sales scheme, he, along with thousands of individuals and entities who paid copayment or deductible amounts for beneficiaries under Medicare, overpaid for the prescription drug Lupron, which is used to treat prostate cancer.

Acie alleged that Medicare reimbursement has historically relied on the "average wholesale price" (AWP) published in Redbook, a pharmaceutical publication. Medicare reimbursed medical providers 80% of the allowable amount, and the Medicare beneficiary paid the remaining 20%, referred to as the copayment amount. Acie contended that the defendants wrongfully supplied Redbook with an inflated AWP, *i.e.*, that the prices the defendants charged private-sector purchasers for Lupron were significantly less than the price published in Redbook and relied upon by Medicare and its beneficiaries. Acie claimed that the defendants' fraudulent scheme induced medical providers to purchase, prescribe, and administer Lupron at a low cost, bill Medicare at the inflated cost, and earn a profit from the difference. Acie claimed that, therefore, in essence, the defendants created an improper kickback for their physician customers and increased their own profits and market share. Acie alleged that as a result of the defendants' wrongful inflation scheme, he and those similarly situated substantially overpaid all or part of their 20% copayments for Lupron.

During his deposition on January 10, 2002, James Salanty, a former employee of TAP, testified that the defendants calculated the AWP of Lupron, which was reported to Redbook, by multiplying the wholesale acquisition cost, a competitive price in the marketplace, by 1.25. Salanty testified that, in response to the lowest cost alternative (LCA) program, which some states implemented in 1997 to deal with such price-fixing and which decreased the physicians' reimbursement for Lupron, TAP further discounted the price for doctors who were subject to the LCA reimbursement to maintain the spread.

The defendants submitted the affidavit of Christopher M. Gonzalez, M.D., who stated that his compensation is completely unaffected by the amount of Lupron he prescribes, that he generally was not aware of how patients pay for their services, *i.e.*, whether they have Medicare, and that he uses Lupron because of patient preference and ease of administration, as opposed to profit incentives.

The defendants also submitted the affidavit of Stanley Weintraub, director of reimbursement for a health care consulting and advisory firm and a former senior policy advisor for the Health Care Financing Administration, who stated that to determine the relationship between the class member's Medicare copayment and the AWP for Lupron, one

must define the following groups: "(a) individuals who were prescribed Lupron by participating physicians; (b) individuals who were prescribed Lupron by non[ ]participating physicians; (c) individuals who reside in states where a 'least costly alterative' reimbursement policy has been applied to Lupron reimbursement; (d) individuals who are 65 years or older and still employed for whom Medicare is a secondary insurer; (e) insurers, both commercial (such as Medigap insurers) and non[ ]commercial (such as state Medicaid agencies, including Medicaid Managed Care agencies), who paid claims for part or all of the 20% Medicare part B co[ ]payment and/or deductible for Lupron; and (f) individuals who are members of Medicare HMOs [who do not pay copayments]."

At Rachel and Acie Clark's depositions on December 27, 2001, Rachel testified that after reading information regarding the overcharge for Lupron, she contacted her husband's attorneys. Acie testified that his responsibility as a plaintiff in this suit was to represent the best interests of the class. Acie stated that he, his wife, and his lawyer composed the class. Acie testified that he did not expect to receive funds from the lawsuit but expected to obtain Lupron at a lower cost. Acie testified that he did not understand the claims described in the complaint and did not recognize the responses to the defendants' discovery requests that he had signed.

Acie's class counsel also represent different named plaintiffs in a nationwide federal Racketeer Influenced and Corrupt Organizations (RICO) class action based on the same factual allegations. Goetting v. TAP Pharmaceutical Products, Inc., No. 01—0703 (filed S.D. Ill. October 24, 2001). The Judicial Panel on Multidistrict Litigation consolidated the Goetting action with other federal class actions related to Lupron pricing practices. The plaintiffs' counsel's multidistrict litigation complaint includes an action under Illinois's Consumer Fraud Act and an action for unjust enrichment, in addition to five federal RICO causes of action and a common law fraud action against these defendants.

On November 15, 2001, the plaintiffs in the case *sub judice* moved for class certification, and on March 12, 2002, after hearing arguments, the trial court certified the following as a nationwide class: "All individuals or non-ERISA third-party payor entities in the United States who paid any portion of the 20% co[ ]payment or deductible amount for beneficiaries under the Medicare Part B for Lupron during the period 1993 through the present (the class period)."

On April 19, 2002, the trial court, pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308), certified the following questions to facilitate an immediate appellate review by this court:

"a. Whether common issues of fact and/or law predominate when each class member based his or its decision to use or purchase Lupron on factors unrelated to Lupron's [AWP] and when each class member was subject to one of many different reimbursement methods depending on, *inter alia*: (a) the state in which the class member resides or whose regulations govern the class member's reimbursement; (b) the Medicare carrier responsible for the individual class member's reimbursement; (c) the nature of the individual class member's medical care provider's reimbursement request; (d) the type of entity from which the class member purchased Lupron; (e) the type of supplemental insurance program(s), if any, in which the individual class member is enrolled; and (f) the nature of the third party-payor class member entity and the services which it contracted to provide or purchase.

b. Whether, under the United States Constitution and Illinois choice[-]of[-]law principles, the Illinois Consumer Fraud Act can apply nationwide to claims of class members who are not Illinois residents and were not billed for Lupron in Illinois, especially in light of other similar class actions pending in various state and federal jurisdictions throughout the nation.

c. Whether, assuming the Illinois Consumer Fraud Act cannot apply nationwide to each class member's claims, variations in the 50 [s]tates' consumer protections laws create individual issues of law that predominate over common issues of law.

d. Whether a plaintiff who has a limited understanding of his own claims and the purpose of his own lawsuit can adequately represent a nationwide class of individuals and third party-payor entities and serve as its class representative.

e. Whether plaintiff's counsel can simultaneously pursue this class action as well as a separate and potentially conflicting class action and still adequately protect the interests of the class in this case.

f. Whether a class action is an appropriate method for the fair and efficient adjudication of the controversy where: (a) mini[ ]trials will be necessary to determine whether each class member has a right to recover; (b) sub[ ]classification will be necessary to address critical variations in the consumer protection laws of the fifty states; and (c) multiple sets of instructions to the jury will be necessary to take into account the varying *prima facie* elements, standards of proof, and damages available depending on which state's law applies."

On October 28, 2002, this court granted the defendants' petition for leave to appeal the national class-certification order.

## ANALYSIS

■ To determine whether the proposed class should be certified,

the court accepts the allegations of the complaint as true. *Johns v. De-Leonardis*, 145 F.R.D. 480, 482 (N.D. Ill. 1992). The trial court has broad discretion to determine whether a proposed class satisfies the requirements for class certification and should err in favor of maintaining class actions. *King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 26 (7th Cir. 1975). The trial court's certification of a class will be disturbed only upon a clear abuse of discretion or an application of impermissible legal criteria. *McCabe v. Burgess*, 75 Ill. 2d 457, 464 (1979). "The scope of appellate review is limited to an assessment of the trial court's exercise of discretion and does not extend to an independent, *de novo* evaluation of the facts alleged to justify litigation of the case as a class action." *Avery v. State Farm Mutual Automobile Insurance Co.*, 321 Ill. App. 3d 269, 279 (2001), *appeal allowed*, 201 Ill. 2d 560, 786 N.E.2d 180 (2002).

■ To maintain a class action in Illinois, the court must find the following:

"(1) The class is so numerous that joinder of all members is impracticable.

(2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3) The representative parties will fairly and adequately protect the interest of the class.

(4) The class action is an appropriate method for the fair and efficient adjudication of the controversy." 735 ILCS 5/2—801 (West 2000).

## Numerosity

■ The plaintiff's complaint alleges thousands of plaintiffs nationwide, and the defendants do not dispute that the class is so numerous that the joinder of all members would be impractical. Accordingly, the first prerequisite of section 2—801 of the Code of Civil Procedure (735 ILCS 5/2—801(1) (West 2000)) is met.

## Common Questions of Fact or Law

The defendants assert that the application of Illinois law to non-Illinois class members, whose transactions with non-Illinois medical care providers occurred in states other than Illinois, violates the due process and commerce clauses of the United States Constitution, principles of state sovereignty, and Illinois choice-of-law rules.

■ In *Avery*, 321 Ill. App. 3d at 281, precedent to which we are bound, this court rejected the argument that it is error to certify a nationwide consumer fraud class because the claims of non-Illinois class members are governed by varying consumer fraud laws. "Illinois

courts have found class actions maintainable in situations where the class includes the residents of other states." *Avery*, 321 Ill. App. 3d at 281.

The substantive law of Illinois, the forum state, may be applied, consistent with the requirements of procedural due process, where Illinois has significant contact or aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests ensuring that the choice of its law is not arbitrary or unfair. *Martin v. Heinold Commodities, Inc.*, 117 Ill. 2d 67, 82 (1987) (relying on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22, 86 L. Ed. 2d 628, 648, 105 S. Ct. 2965, 2980 (1985)). "The [Consumer Fraud] Act does not limit its application to resident consumers." *Avery*, 321 Ill. App. 3d at 281. Non-Illinois consumers may pursue an action under Illinois's Consumer Fraud Act against a resident defendant where the deceptive acts and practices were perpetrated in Illinois. *Avery*, 321 Ill. App. 3d at 281; see also *Miner v. Gillette Co.*, 87 Ill. 2d 7, 19 (1981) (a class action was certified that included nonresidents of Illinois and involved several counts, including one based on Illinois's Consumer Fraud Act).

The defendants' deceptive practices involving the fraudulent inflation of the cost of Lupron were designed, established, and initiated from the defendants' marketing and sales agents located at the defendants' corporate headquarters in Illinois and were designed to be uniformly relied upon by Medicare and its beneficiaries nationwide when they overpaid for Lupron. See *Avery*, 321 Ill. App. 3d at 281. This common allegation implicates the legitimate interest of the State of Illinois in ensuring that entities within its jurisdiction operate in accordance with Illinois law. See *Martin*, 117 Ill. 2d at 82. "Illinois has a legitimate interest in applying its law to adjudicate this dispute and to insure that its residents comply with its consumer-protection laws while serving Illinois and out-of-state consumers." *Avery*, 321 Ill. App. 3d at 282. Illinois has significant contacts to the claims asserted by this class so that the application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process. See *Avery*, 321 Ill. App. 3d at 282.

Additionally, "[t]he resolution of this case under Illinois law does not violate another state's sovereignty, nor is interstate commerce adversely impacted" (*Avery*, 321 Ill. App. 3d at 282). See also *Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336, 105 L. Ed. 2d 275, 288, 109 S. Ct. 2491, 2499 (1989) (the critical inquiry is whether the practical effect of regulation is to control conduct beyond the boundaries of the state). The practical effect of applying Illinois law to the present case is to control conduct within the boundaries of Illinois, namely, the

reporting by the defendants, headquartered in Illinois, of a deceptively inflated price for Lupron to uniformly defraud Medicare and its beneficiaries. Although the defendants note the variations in the states' consumer fraud laws, they fail to demonstrate that their deceptive conduct is authorized by any other state's laws or that compliance with the substantive laws of Illinois would lead them to violate a law imposed by another state, and therefore, the defendants fail to distinguish *Avery*. See *Avery*, 321 Ill. App. 3d at 282.

■ Furthermore, applying Illinois's Consumer Fraud Act to the present case does not violate Illinois's choice-of-law principles. To determine which law applies, we look to the conflicts law of Illinois, the forum state. *Esser v. McIntyre*, 169 Ill. 2d 292, 297 (1996). The local law that has the most significant relationship with the occurrence and with the parties determines their rights and liabilities. *Ingersoll v. Klein*, 46 Ill. 2d 42, 47 (1970). To determine the state of the most significant relationship, the forum considers the following contacts: (1) the place where the injury occurred, (2) the place where the conduct occurred, (3) the parties' domicile, nationality, place of incorporation, and place of business, and (4) the place where the parties' relationship is centered. *Ingersoll*, 46 Ill. 2d at 47-48.

■ The injury to the plaintiffs, in paying the inflated cost of Lupron, occurred throughout the country, including Illinois. The conduct leading to the injury occurred in Illinois, *i.e.*, the defendants' marketing and sales agents, located in the defendants' principal places of business in Illinois, concocted the fraudulent scheme to inflate the price of Lupron. Although the plaintiffs are domiciled throughout the country, the defendants' principal places of business are in Illinois. The relationship of the parties, if any, is centered in Illinois, where the fraudulently inflated price of Lupron originated. Illinois may apply its law to the out-of-state occurrences because Illinois has the most significant relationship to the activity in question. See *Ingersoll*, 46 Ill. 2d at 48.

The defendants further contend that the class does not meet the predominance prerequisite to class certification because individual issues of law, required by the need to apply all 50 states' laws to the nationwide class claims, along with individual issues of fact required by the materiality, proximate cause, and injury elements of a Consumer Fraud Act claim, are present. Specifically, the defendants assert that individual issues of fact, such as how class members made copayments for Lupron, whether the copayments were based on the published AWP for Lupron, and why their medical care providers administered Lupron, defeat class certification.

The plaintiffs assert that, at the trial, they will prove the following

common questions of fact and law: that because the defendants lied about the AWP for Lupron, class members were injured by paying a price for Lupron that exceeded the amount they should have paid had the defendants properly disclosed the AWP; that Medicare and its patients were overcharged for Lupron by a specified percentage above the AWP; and that although damage calculations may be different based, for example, on whether the Medicare beneficiary was in an LCA state, the overpayment may reasonably be applied on a subclass-wide basis.

We have previously determined that Illinois's Consumer Fraud Act may apply to the present case (see *Avery*, 321 Ill. App. 3d at 282-83), abrogating the need to apply the laws of all 50 states to these claims and rendering irrelevant the defendants' argument that state law variances in the present case defeat the predominance of the common issues of fact and law. We therefore address whether the individual issues of fact required by the materiality, proximate cause, and injury elements of a Consumer Fraud Act claim defeat class certification.

■ So long as questions of fact or law common to the class predominate over questions affecting only individual members of the class, the statutory requisite is met. *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 338 (1977). "A common question may be shown when the claims of the individual class members are based upon the common application of a statute or when the members are aggrieved by the same or similar conduct [citation] or a pattern of conduct [citations]." *Avery*, 321 Ill. App. 3d at 280. A class action can properly be prosecuted where the defendants allegedly acted wrongfully in the same basic manner as to an entire class, and in such circumstances, the common class questions predominate the case, and the class action is not defeated. *Gordon v. Boden*, 224 Ill. App. 3d 195, 201 (1991).

■ " '[A] class action will not be defeated solely because of some factual variations among class members' grievances.' " *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D. Ill. 1989), quoting *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980). "[I]t is appropriate to litigate the questions of law or fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding or proceedings the questions that may be peculiar to individual class members." *Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.*, 137 Ill. App. 3d 84, 100 (1985), *aff'd on other grounds*, 114 Ill. 2d 278, 499 N.E.2d 1319 (1986); see *Heastie*, 125 F.R.D. at 675 (certifying class even though each class member must show that the defendant's RICO violation caused injury to his or her property); *Ridings v. Canadian Imperial Bank of Commerce Trust Co.*, 94 F.R.D. 147,

151 (N.D. Ill. 1982) (finding in a securities fraud case that individual questions of reliance do not bar class certification on the common questions involved because, "[i]f necessary, the [c]ourt may order separate hearings on the individual questions of reliance after determination of the common questions of law and fact").

Individual questions of injury and damages do not defeat class certification. *Heastie*, 125 F.R.D. at 675. That some members of the class are not entitled to relief because of some particular factor will not bar the class action. *Steinberg*, 69 Ill. 2d at 338. Similarly, "[t]he fact that the class members' recoveries may be in varying amounts which must be determined separately does not necessarily mean that there is no predominate common question." *Avery*, 321 Ill. App. 3d at 280. If the damage determinations are required on an individual basis, the court can utilize a number of procedures to determine damages, including creating subclasses. *In re Folding Carton Antitrust Litigation*, 75 F.R.D. 727, 735 (N.D. Ill. 1977).

■ The record reveals the question common to the class that predominates over questions affecting individual class members: whether the defendants engaged in a fraudulent and deceptive scheme to charge Medicare, its beneficiaries, and third-party payors an inflated cost for the prescription drug Lupron. See 815 ILCS 505/2 (West 2000); *Thacker v. Menard, Inc.*, 105 F.3d 382 (7th Cir. 1997) (to state a claim under the Consumer Fraud Act, a plaintiff must show a deceptive act or practice, an intent by the defendant that the plaintiff rely on the deception, and that the deception occurred in the course of conduct involving trade or commerce). If, after the trial, it is found that the defendants engaged in the deceptive practice of inflating the price of Lupron, with the intent that Medicare beneficiaries rely on the deception, then the defendants acted wrongfully in the same basic manner as to the entire class, the liability question common to all class members has been established in favor of the plaintiffs, and the class members may recover a refund for their overpayment for Lupron. See *Gordon*, 224 Ill. App. 3d at 201.

The fact that some class members were billed based on the provider's actual cost, the provider's "estimated acquisition cost," or the AWP for the "least costly alternative" to Lupron involves questions of complexity or uncertainty regarding the amount of damages and does not present individual issues to bar class certification. See *In re Folding Carton Antitrust Litigation*, 75 F.R.D. at 735; *Avery*, 321 Ill. App. 3d at 283 (the fact that the class members' claims for refunds may be in varying amounts which must be determined separately does not necessarily mean that the common question does not predominate). The fact that some members did not make copayments also does not

defeat class certification, because the elemental determination that some members of a class are not entitled to relief because of some particular factor will not bar the class action. See *Steinberg*, 69 Ill. 2d at 336. Whether the plaintiff was injured will be relatively easy to resolve, and the individual plaintiffs' damages will be measured by the difference between the reported AWP and the actual AWP, calculated according to the individual's copayment amount.

The defendants assert that the plaintiffs' unjust enrichment claim is also swamped with individual issues of fact that overwhelm the common issues because, the defendants contend, to show that the defendants benefited from the increased sales and market share of Lupron that flowed from the deceptive conduct, a physician-by-physician evaluation must be conducted to determine why each physician decided to administer Lupron. The plaintiffs counter that to establish their unjust enrichment claim, they will address the common question of whether the defendants fraudulently inflated the cost of Lupron and determine the defendants' profit from their illegal conduct, which would be unrelated to individual class members but divided among the class members based upon their out-of-pocket losses.

To prove a claim of unjust enrichment, a plaintiff must show that the defendant has unjustly retained a benefit to the plaintiff's detriment and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989). We agree with the plaintiffs' reasoning and conclude that common issues, regarding both the plaintiffs' consumer fraud claim and the plaintiff's unjust enrichment claim, predominate over the issues that affect only individual members. See 735 ILCS 5/2—801(2) (West 2000).

### Representative Party

The defendants next assert that Acie and his counsel will not adequately represent the proposed class because Acie does not have a basic understanding of his claims or the class he represents and because counsel are simultaneously pursuing an overlapping class action in the federal multidistrict litigation proceedings, thereby creating a possible conflict of interest.

"The purpose of the adequate representation requirement is merely to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim." *Gordon*, 224 Ill. App. 3d at 203. The plaintiff class representative "need only have a marginal familiarity with the facts of his case[ ] and does not need to understand the legal theories upon which his

case is based to a greater extent." *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 355 (N.D. Ill. 1998); see also *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981) (recognizing that class certification was not defeated in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366, 15 L. Ed. 2d 807, 810, 86 S. Ct. 845, 847 (1966), even though "the named plaintiff [a Polish immigrant] did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor [*sic*] even the nature of the misconduct of the defendants" and relied almost entirely on the explanations of her son-in-law).

■ Class certification is not defeated even though Acie's wife, as opposed to Acie, initiated contact with counsel, Acie may not understand the complexities of his complaint, and Acie has little knowledge of the intricacies of his lawsuit. See *Surowitz*, 383 U.S. at 366, 15 L. Ed. 2d at 810, 86 S. Ct. at 847. The interests of the named plaintiff are the same as those of the absentee class members—to seek damages based on the defendants' misrepresentations to consumers concerning the price of Lupron. Acie is 82, is a Medicare recipient, and paid his 20% copayment. Although the third-party payor entities' damages most likely will exceed the individual class members' losses, Acie understands the core issue of the case, *i.e.*, that he was overcharged for Lupron, Acie has a sufficient interest in the outcome to ensure vigorous advocacy (see *Gilmore v. Southwestern Bell Mobile Systems, L.L.C.*, 210 F.R.D. 212 (N.D. Ill. 2001)), and therefore, Acie is an adequate class representative. See 735 ILCS 5/2—801(3) (West 2000).

■ Due process requires that the plaintiffs' attorney be qualified, experienced, and able to conduct the proposed litigation. *Steinberg*, 69 Ill. 2d at 339. Neither the court nor the defendants entertained doubt that the plaintiffs' attorneys possess the requisite skill and ability to litigate the plaintiffs' claims. Moreover, the potential conflicts are speculative at this time and do not render counsel inadequate. See *Sheftelman v. Jones*, 667 F. Supp. 859, 865 (N.D. Ga. 1987) (the fact that the plaintiffs' counsel also represented other classes against other common defendants in an unrelated class action did not render counsel inadequate for class-certification purposes). At this point, the federal class action suit does not create the kind of conflict that would defeat the other elements that render the certification of this action proper or prevent Acie and class counsel from adequately protecting the interests of the class. We note, however, that basic considerations of fairness require the trial court to undertake a stringent and continuing examination of the adequacy of representation by the named class

representative and his counsel at all stages of the litigation (see *Susman v. Lincoln American Corp.*, 561 F.2d 86, 89-90 (7th Cir. 1977)) and to be cognizant of actual conflicts that arise.

## Class Action Is Appropriate Method

The defendants assert that the class action is not the appropriate method for the fair and efficient adjudication of the controversy, given the need for extensive subclasses to address variations in state law, the need for minitrials to resolve individual issues of fact attendant to each class member's claims, and the pendency of other actions around the nation that will address the claims of the absent class members in this case.

To satisfy the "appropriate method" requirement, the plaintiff must demonstrate that the class action (1) can best secure the economies of time, effort, and expense and promote a uniformity of decision or (2) can accomplish the other ends of equity and justice that class actions seek to obtain. *McCabe*, 75 Ill. 2d at 468.

Applying these principles to the record before us, we conclude that a class action is appropriate in the case at bar. Initially, our holding that the first three prerequisites of section 2—801 of the Code of Civil Procedure have been established makes it evident that the fourth requirement has been fulfilled. See *Steinberg*, 69 Ill. 2d at 339. Additionally, this is a consumer class action, and in our large and impersonal society, class actions are often the last barricade of consumer protection. See *Gordon*, 224 Ill. App. 3d at 204. The consumer class action provides restitution to the injured and deterrence to the wrongdoer; thus, the ends of equity and justice are attained. See *Gordon*, 224 Ill. App. 3d at 204. Due to the numerous members of the class and the existence of common questions of fact and law, a class action will serve the economies of time, effort, and expense and prevent possible inconsistent results. Litigating the individual lawsuits in the present case would be a waste of judicial resources, and addressing the common issues in one action would aid judicial administration. See *Avery*, 321 Ill. App. 3d at 279.

In conclusion, the record supports the trial court's decision. We caution the trial court, however, that in the future it should make findings to support its legal conclusions. See *Besinga v. United States*, 923 F.2d 133, 135 (9th Cir. 1991) (suggesting a bright-line rule requiring trial courts to state their certification findings because the absence of those findings often leads reviewing courts to speculate as to certification decisions). Further, we note that the class action device is flexible in nature and may be modified by the trial court at a later point in the litigation to accommodate changes or newly discovered facts. See *Gordon*, 224 Ill. App. 3d at 202-03.

Having addressed the defendants' contentions and the trial court's questions, we affirm the trial court's decision certifying the suit as a class action.

## CONCLUSION

For the foregoing reasons, we affirm the order of the circuit court of Williamson County.

Affirmed.

WELCH and CHAPMAN, JJ., concur.