In re ESTATE OF Elizabeth Elaine RATH, a disabled adult, on behalf of it and all others similarly situated, Plaintiffs,

v.

ABBOTT LABORATORIES, INC., Defendant.

No. 04–CV–0141–MJR.

United States District Court, S.D. Illinois.

April 14, 2004.

Charles F. Barrett, Barrett Law Office, Nashville, TN, Dale J. Aschemann, Aschemann Keller, LLC, Patrick J. Barrett, Randy Patchett, Patchett Law Office, Timothy Keller, Aschemann Keller, LLC, Marion, IL, David S. Stellings, Elizabeth H. Cronise, Lieff, Cabraser et al., New York City, for Plaintiffs.

Bradley E. Lerman, Dan K. Webb, Erik W. Snapp, George C. Lombardi, Winston & Strawn, L.L.P., Chicago, IL, Larry E. Hepler, W. Jason Rankin, Beth A. Bauer, Burroughs, Hepler et al., Edwardsville, IL, for Defendant.

### MEMORANDUM and ORDER

REAGAN, District Judge.

On January 21, 2004, the Estate of disabled adult Elizabeth Elaine Rath (re-

ferred to herein simply as "Rath") filed a putative class action suit in the Circuit Court of St. Clair County, Illinois. Rath alleged that Abbott Laboratories, Inc. (a) engaged in unfair and deceptive practices which violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and (b) was unjustly enriched through an unlawful scheme which entailed manipulation of Medicare reimbursement rates. More specifically, Rath claimed as follows.

Abbott manufactures and sells durable medical equipment, including enteral feeding equipment (sold by Abbott's "Ross Products" division). Through Ross Products, Abbott counseled health care providers such as skilled nursing facilities (the "Providers") to submit claims to the Medicare program for enteral feeding pumps and plastic pump sets. Through Ross Products, Abbott further advised the Providers that Medicare allowed *separate* reimbursement for enteral feeding pumps and plastic pump sets.

Acting on this advice, the Providers fraudulently billed Medicare for this equipment, which resulted in the Providers receiving *two* payments from Medicare—one via reimbursement for the plastic pump set and another through a separate charge for the enteral feeding pump itself, despite the fact that the enteral feeding pump had been supplied to the Providers at no cost.

Additionally, Abbott (through Ross Products) offered up-front payments to the Providers who entered into written contracts with Ross Products. Abbott told the Providers that by calling the up-front payment a "signing bonus" or a "conversion bonus," the Providers would be excused from reporting the up front-payment to the Government as a discount on durable medical equipment. Thus, Rath

alleged, Abbott (through Ross Products) attempted to prevent Medicare from determining the actual per product price which Ross charged the Providers for enteral feeding equipment. Finally, Rath alleged that Ross provided false documentation to the Providers, documentation used to establish a per pump cost in the event of a Medicare audit. These deceptive practices resulted in the payment of fraudulently-inflated prices for enteral feeding equipment by Rath and similarly situated individuals.

As class representative, Rath sought damages on behalf of all persons in the United States who paid some proportion of the Medicare-charged costs, submitted under Medicare Part B, for enteral feeding pumps manufactured by Abbott, its subsidiaries or agents, from January 1, 1992 to May 15, 2003. Rath estimated this class to include "at least tens of thousands of Medicare patients throughout the United States" (Doc. 2, p. 8).

Served with Rath's complaint on January 29, 2004 (*see* Doc. 1, ¶ 1), Abbott removed the action to this United States District Court on March 1, 2004 (the 30th day after service of the complaint). The case was assigned to Judge Herndon, who recused himself on March 5, 2004, to Judge Stiehl, who recused himself on March 8, 2004, and to Chief Judge Murphy, who recused himself on March 10, 2004.

■ Thereafter, the case was assigned to the undersigned District Judge, before whom the case now comes for threshold review.[1] The principal purpose of this review is to ascertain that subject matter jurisdiction properly lies. *See, e.g., Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986)("The first thing a federal judge

---

1. A fully-briefed remand motion also is pending—Doc. 18.

should do when a complaint is filed is check to see that federal jurisdiction is properly alleged."). The party invoking federal jurisdiction—here, Defendant Abbott—bears the burden of demonstrating that all jurisdictional requirements have been met. *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir.1997).

Rath's state court complaint expressly disavows any federal jurisdictional basis for this lawsuit: "There are no federal questions raised, and diversity is lacking because Defendant is an Illinois corporation, with its principal place of business in Illinois, and plaintiff is an Illinois citizen, as are many others in the class." Doc. 2, ¶ 7. In the removal notice, however, Defendant Abbott claims that this Court may exercise subject matter jurisdiction under the federal question statute, 28 U.S.C. § 1331: "federal question jurisdiction exists in this action because plaintiff's right to relief under its state law claim depends on the resolution of substantial questions of federal Medicare law." Doc. 1, ¶ 13.

■ 28 U.S.C. § 1331 confers original jurisdiction on federal district courts over all civil actions arising under the Constitution or laws of the United States. In assessing the propriety of removal based on federal question jurisdiction, this Court applies the well-pleaded complaint rule. That rule provides that a "cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959, 966 (7th Cir.2000), *citing Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 61, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

**2.** Indeed, a plaintiff who has both federal and state causes of action may ignore the federal claims and pursue only the state claims in state court. *Illinois v. Kerr–McGee Chemical*

■ Under the well-pleaded complaint rule, the Court examines the state court complaint, not the defendant's response, "to determine whether the plaintiff's claim falls under federal question jurisdiction." *Id.*

■ A federal *defense* to a claim arising under state law does not create jurisdiction "and therefore does not authorize removal." *Moran*, 230 F.3d at 967, *citing Blackburn v. Sundstrand Corp.*, 115 F.3d 493, 495 (7th Cir.), *cert. denied*, 522 U.S. 997, 118 S.Ct. 562, 139 L.Ed.2d 403 (1997). Similarly insufficient is the fact that a federal question may be *implicit* in a plaintiff's claim. *See Doe v. Allied–Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993).[2]

In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 807–08, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), the United States Supreme Court explained:

Article III of the Constitution gives the federal courts power to hear cases "arising under" federal statutes. That grant of power, however, is not self-executing, and it was not until the Judiciary Act of 1875 that Congress gave the federal courts general federal-question jurisdiction. Although the constitutional meaning of "arising under" may extend to all cases in which a federal question is "an ingredient" of the action, *Osborn v. Bank of the United States*, 9 Wheat. 738, 823, 6 L.Ed. 204 (1824), we have long construed the statutory grant of federal-question jurisdiction as conferring a more limited power.... Under our longstanding interpretation of the current statutory scheme, the question whether a claim "arises under" federal law must be determined by reference to the "well-pleaded complaint."

*Corp.*, 677 F.2d 571, 575 (7th Cir.), *cert. denied*, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982).

The Supreme Court concluded that even if a complaint alleges a violation of a *federal* statute as an element of a state cause of action, unless Congress provided a federal private right of action for that violation, the complaint does *not* state a claim "arising under" federal law. *Id.*, 478 U.S. at 817, 106 S.Ct. 3229.

In the case at bar, Abbott maintains that Rath's claims "rise or fall" depending on the determination of questions of federal Medicare law. Doc. 27, p. 1. Having carefully assessed the allegations of the complaint, the Court disagrees.

Rath's complaint alleges two causes of action based squarely on state law—one for violation of the Illinois consumer fraud statute, the other for unjust enrichment. Rath's right to relief on both claims does not depend necessarily on any substantial question of federal law.

 For instance, to prove a claim of unjust enrichment under Illinois law, the plaintiff must show "that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience." *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App.3d 538, 278 Ill.Dec. 276, 798 N.E.2d 123, 133 (2003), *citing HPI Health Care Services, Inc. v. Mount Vernon Hospital, Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672 (1989). Rath need prove no violation of federal law to establish a claim of unjust enrichment, and Rath's right to relief does not depend on a substantial question of federal law. The same holds true for Rath's consumer fraud claim.

Like the United States Supreme Court in *Merrell Dow*, this Court concludes that, because Plaintiff's causes of action did not arise under federal law, this case was improperly removed to federal court. *Id.*, 478 U.S. at 807, 106 S.Ct. 3229.

Because this Court lacks subject matter jurisdiction, the Court GRANTS Rath's remand motion (Doc. 18) and REMANDS this case to the Circuit Court of St. Clair County, Illinois. The remand results in the *denial as moot* of the other two pending motions (Docs. 7 and 22).

IT IS SO ORDERED.