**Mark B. ARONSON, Appellant**

v.

**BRIGHT–TEETH NOW, LLC., Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.

Filed May 8, 2003.

Charles S. Morrow, Pittsburgh, for appellant.

Matthew M. Pavlovich, Pittsburgh, for appellee.

Before: DEL SOLE, P.J., MUSMANNO and KELLY, JJ.

DEL SOLE, P.J.:

¶ 1 This is an appeal from a trial court order granting Appellee, Bright–Teeth, Now, LLC. (Bright–Teeth's) preliminary objections and dismissing Appellant's complaint. At issue is whether the restrictions on the use of telephone equipment set forth in § 227 of the Federal Telephone Consumer Protection Act of 1991 (TCPA) apply to unsolicited commercial electronic mail (e-mail). The trial court found that

---

the regulation of unsolicited commercial e-mail is not contained in this provision which regulates unsolicited advertisements to a telephone facsimile (FAX) machine. We agree, and affirm the trial court's ruling.

¶ 2 Appellant brought an action seeking to recover $9,000 in statutory damages[1] under the TCPA after having received unsolicited e-mail advertisements from Bright–Teeth on six separate occasions. He alleged that this action violated the provisions found in § 227 of the TCPA, 47 U.S.C. § 227(b)(1)(C). It states:

> (b) Restrictions on use of automated telephone equipment.
>> (1) Prohibitions. It shall be unlawful for any person within the United States—
>>
>> . . .
>>
>> (C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.

47 U.S.C. § 227(b)(1)(C).

After examining the definition of a "facsimile machine" as defined in § 227 and the legislative history of its provisions, including an analysis of the costly burdens unsolicited fax advertising places upon its recipient, the trial court ruled that the TCPA does not apply to unsolicited commercial e-mail advertisements. Accordingly, it granted Bright–Teeth's preliminary objections and dismissed Appellant's complaint.

¶ 3 On appeal Appellant claims that the TCPA sets forth a clear and unambiguous definition of the term "telephone facsimile machine" which can include unsolicited commercial e-mail and the trial court erred in looking beyond its terms to discern legislative intent. While we agree that a clear definition of a "telephone facsimile machine" is set forth in the Act, we conclude that by its terms it does not cover unsolicited commercial e-mail.

■ ¶ 4 Included in § 227 of the TCPA is a definition for the term "telephone facsimile machine." In relevant part it defines the term as "equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(2)(B). Appellant argues that his personal computer, which received the 6 unsolicited e-mail advertisements, fits this definition. He explains that his personal computer was attached to a separate telephone line and to a computer printer. Thus, he maintains he received Bright–Teeth's unsolicited messages on equipment which has the capacity to transcribe text or images (or both) from an electronic signal over a regular telephone line onto paper. Appellant asserts that the attached printer gives the computer the capacity to print the e-mail messages onto paper, as demonstrated by the copies he attached to his complaint.

■ ¶ 5 We cannot accept Appellant's argument that a personal computer meets the definition of a facsimile machine. Rather, our reading of the TCPA causes us to conclude that it specifically does not include e-mail transmissions in the conduct it was seeking to regulate. First, we note that the prohibited conduct concerns the use of "any telephone facsimile machine, **computer** or other device to send an unsolicited advertisement to a **telephone facsimile machine.**" 47 U.S.C. § 227(b)(1)(C) (emphasis added). If a

---

1. Under 47 U.S.C § 227(b)(3) a private right of action may be brought based upon a violation of the provisions of § 227.

computer and a FAX machine were considered one in the same, there would be no need to specifically include a computer as among the types of "sending" equipment. It would have been sufficient to describe a telephone facsimile machine as both the sending and receiving instrument. Notably, only the term "telephone facsimile machine" is set forth as the receiving equipment. A "computer" is not included, despite the fact that it is included as a device which may send an unsolicited advertisement. It is a well-settled maxim of statutory construction that "expressio unius est exclusio alterius," i.e., the mention of one thing implies the exclusion of others not expressed. *Jerry Davis, Inc. v. Nufab Corp.*, 450 Pa.Super. 696, 677 A.2d 1256, (1996). The inclusion of only a FAX machine as a piece of receiving equipment enables us to conclude that computer generated and received e-mails are not within the purview of the TCPA.

¶ 6 Not only does the common usage of the term "facsimile machine" differ from a "computer," the definition provided within § 227 does not encompass computers. The definition refers to equipment which receives an electronic signal over a regular telephone line and transcribes text or images from that signal onto paper. Contrary to what Appellant argues, a computer does not have the capacity to print. A computer user reading a message may elect to print that message and send that message to a printer to accomplish that task. This function is entirely different from the printing function of a FAX machine which, after receiving a transmitted message over a phone line, prints out a copy of the message. The user does not read the message before it is printed and does not have the capability of determining whether to elect to have that message printed.

¶ 7 While a FAX machine is described as capable of transcribing text or images from an electronic signal over a telephone line, a computer transmission is much more complex. The Supreme Court of the State of Washington noted the route a commercial e-mail message travels from sender to receiver:

> When an e-mail message is transmitted from one e-mail address to another, the message generally passes through at least four computers: from the sender's computer, the message travels to the mail server computer of the sender's Internet Service Provider (ISP); that computer delivers the message to the e-mail server computer of the recipient's ISP, where it remains until the recipient retrieves it onto his or her own computer.

*State of Washington v. Heckel*, 143 Wash.2d 824, 24 P.3d 404 (2001). The recipient may then delete the message unopened, open and read the message and elect not to print it, or elect to print it before or after reading the message. This process is entirely different from the process used by a telephone facsimile machine as defined in the Act. A computer does not merely transcribe a message from a signal received over a regular telephone line onto paper as does a FAX machine. Simply stated, a computer is not a FAX machine and a commercial e-mail message is not regulated by the terms of 47 U.S.C. § 227.

¶ 8 The problems associated with receiving unsolicited e-mail messages, often referred to as SPAM, have not gone unnoticed by the private and public sectors and by public interest groups. *See Coalition Against Unsolicited Commercial e-mail,* www.cauce.org. It has been noted that the increase in unsolicited e-mail traffic causes Internet service providers to incur increases in operation costs as they need to invest in more computer equipment, hire more

customer services representatives to field complaints and more system administrators to detect fraudulent accounts. *See State of Washington v. Heckel.* 24 P.3d at 409–410. The frustrations of the public at large have prompted certain states to enact laws governing unsolicited commercial e-mail.[2] Legislation has also been introduced in Congress seeking to regulate unsolicited commercial e-mail. See Senate Bill S.630, H.R. 3113 and H.R. 95. While unsolicited commercial e-mail may one day be regulated by federal law, the provisions of § 227 of the TCPA do not apply to e-mail communications. Accordingly, the trial court properly dismissed Appellant's complaint.

¶ 9 Order affirmed.

**2.** *See:* 2003 Ark. ALS 1019 (Arkansas), 11 Del. C. § 937 (Delaware), 720 ILCS 5/16D–3 (Illinois), 1123 R.S.Mo. § 407 (Missouri), R.I. Gen. Laws § 6–47–2, 2002 (Rhode Island), S.D. Laws 186 (South Dakota), Tenn.Code Ann. § 47–18–1604 (Tennessee), Rev.Code Wash. (ARCW) § 19.190.020 (Washington).