# Illinois Official Reports

## Appellate Court

---

### *Ballard RN Center, Inc. v. Kohll's Pharmacy & Homecare, Inc.*,
### 2014 IL App (1st) 131543

---

| | |
|---|---|
| Appellate Court Caption | BALLARD RN CENTER, INC., f/k/a Ballard Nursing Center, Inc., Plaintiff-Appellee, v. KOHLL'S PHARMACY AND HOMECARE, INC., Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-13-1543 |
| Filed | November 6, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an class action alleging a violation of the Telephone Consumer Protection Act based on defendant's transmission of unsolicited faxes in count I, requesting relief under the Consumer Fraud Act in count II, and seeking recovery for conversion based on defendant's use of ink and paper that belonged to the recipients of the faxes in count III, the trial court properly reversed the class certification as it pertained to count I, since defendant's tender of a check for $2,500 covering any damages plaintiff suffered as a result of the violation of the Act mooted plaintiff's claims under count I; however, the trial court was affirmed in all other respects, including its decisions on the elements of commonality, adequacy of representation, and appropriateness, and on remand, the trial court was directed to revisit the issue of class certification in view of the fact that only counts II and III remain. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-17229; the Hon. Neil Cohen, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded with directions. |

Counsel on Appeal

Amir H. Tahmassebi and Lucas Sun, both of Konicek & Dillon, P.C., of Geneva, for appellant.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, and Julie Clark, all of Edelman, Combs, Latturner & Goodwin, LLC, of Chicago, for appellee.

Panel

JUSTICE BILL TAYLOR delivered the judgment of the court, with opinion.
Presiding Justice Fitzgerald Smith and Justice Howse concurred in the judgment and opinion.

**OPINION**

¶ 1    In this interlocutory appeal, defendant Kohll's Pharmacy & Homecare, Inc. (Kohll's), appeals the trial court's decision to grant class certification to plaintiffs.

¶ 2    On March 3, 2010, plaintiff Ballard RN Center, Inc. (Ballard), allegedly received an unsolicited one-page fax from Kohll's which advertised corporate flu shot services. Ballard filed suit against Kohll's, seeking statutory damages under the Telephone Consumer Protection Act (47 U.S.C. § 227 (2006)) (TCPA) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 2010)), and also damages for conversion of ink and paper. Ballard additionally filed a motion for class certification, requesting that the court certify a class of all parties who, on or about March 3, 2010, were sent unsolicited advertising faxes by Kohll's. Discovery showed that on March 3, 2010, Kohll's sent the fax at issue to a total of 4,760 fax numbers and successfully transmitted it to 4,142 of them.

¶ 3    The trial court granted Ballard's motion and certified the class on April 15, 2013. Kohll's appeals this certification order. For the reasons that follow, we affirm in part and reverse in part.

¶ 4                                I. BACKGROUND

¶ 5    On April 20, 2010, Ballard filed its complaint, which was styled "Complaint–Class Action." The complaint alleges that on March 3, 2010, Ballard received an unsolicited fax from Kohll's, although Ballard had no prior relationship with Kohll's and had not authorized the sending of fax advertisements from Kohll's. It alleges that the fax did not provide an "opt out notice" as required by the TCPA even when faxes are sent with consent or pursuant to an established business relationship. It further asserts, on information and belief, that the fax from Kohll's was part of a mass broadcasting of faxes and Kohll's had transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

¶ 6    A copy of the fax is attached to the complaint. The fax is a one-page document advertising "Corporate Flu Shots." At the bottom of the page, under the heading "Removal From List

Request," the fax states, "If you have received this information in error or if you are requesting that transmissions cease in the future, please notify the sender to be removed as the recipient of future transmissions." It then provides contact information by fax, phone, and email.

¶ 7 Ballard's complaint seeks relief in three counts. Count I seeks relief under the TCPA, which prohibits the use of any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine (47 U.S.C. § 227(b)(1)(c) (2006)) and provides that a private plaintiff can bring suit for violation of the TCPA for $500 in statutory damages, with treble damages for willful or knowing violations. Count II seeks relief under the Consumer Fraud Act (815 ILCS 505/2 (West 2010)), alleging that Kohll's unsolicited fax advertising constituted "unfair acts and practices" in the course of trade and commerce. Finally, count III, for conversion, alleges that by sending unsolicited faxes, Kohll's converted to its own use ink and paper that belonged to Ballard and the class members.

¶ 8 On the same day that Ballard filed its complaint, it also filed a "Motion for Class Certification." In that motion, Ballard requested that the court certify the following classes:

> "All persons and entities with facsimile numbers (1) who, on or after April 20, 2006, or such shorter period during which faxes were sent by or on behalf of defendant Kohll's Pharmacy & HomeCare, Inc., (2) were sent faxes by or on behalf of defendant Kohll's Pharmacy & HomeCare, Inc., promoting its goods or services for sale (3) and who were not provided an 'opt out' notice that complies with federal law. (*Count I*)

> All persons and entities with Illinois fax numbers (1) who, on or after April 20, 2007, or such shorter period during which faxes were sent by or on behalf of defendant Kohll's Pharmacy & HomeCare, Inc., (2) were sent faxes by or on behalf of defendant Kohll's Pharmacy & HomeCare, Inc., promoting its goods or services for sale (3) and who were not provided an 'opt out' notice that complies with federal law. (*Count II*)

> All persons and entities with Illinois fax numbers (1) who, on or after April 20, 2005, or such shorter period during which faxes were sent by or on behalf of defendant Kohll's Pharmacy & HomeCare, Inc., (2) were sent faxes by or on behalf of defendant Kohll's Pharmacy & HomeCare, Inc., promoting its goods or services for sale (3) and who were not provided an 'opt out' notice that complies with federal law. (*Count III*)"

The motion contains no factual allegations in support of class certification. It states that "[p]laintiff will file a supporting Memorandum of Law in due course"; however, it appears that no such memorandum was ever filed.

¶ 9 On June 28, 2012, Kohll's filed for partial summary judgment on count I of Ballard's complaint. In its motion, Kohll's alleged that, on three separate occasions, Kohll's tendered an unconditional offer of payment consisting of a sum that covered all damages Ballard might be entitled to under the TCPA. According to Kohll's, Ballard's counsel summarily rejected this tender while giving no legal basis as to why additional damages were due under the TCPA. Kohll's further asserted that Ballard had not yet filed a motion for class certification. Based upon these allegations, Kohll's argued that Ballard's TCPA claim was moot under *Barber v. American Airlines, Inc.*, 241 Ill. 2d 450, 455 (2011), which holds that a named representative's claim is moot in a class action when the defendant tenders the amount of damages the plaintiff seeks before the representative files a motion for class certification.

¶ 10 Attached to Kohll's motion are three letters sent by Kohll's to Ballard. The first, dated June 29, 2011, includes a check for $1,600; the second, dated June 5, 2012, includes a check

for $1,500; the third, dated June 28, 2012, includes a check for $2,500. All three of these offers were rejected by Ballard and the checks returned to Kohll's.

¶ 11    Ballard filed a response to Kohll's motion for summary judgment in which it acknowledged that Kohll's had correctly stated the holding of *Barber* but denied that *Barber* applied to its case, since Ballard had filed a motion for class certification concurrently with the filing of its complaint on April 20, 2010.

¶ 12    Kohll's filed a reply in which it argued that the April 20, 2010, motion was an incomplete "shell" motion that was legally insufficient to satisfy *Barber*. In this regard, Kohll's pointed out that Ballard had never presented that motion to the court or set a hearing date. Kohll's also stated that Ballard filed the April 20, 2010, motion before discovery had been conducted and therefore had no knowledge of the class.

¶ 13    On November 29, 2012, the trial court denied Kohll's motion for partial summary judgment, stating that Kohll's did not make its tender prior to the filing of Ballard's class certification motion. It reasoned that "*Barber* requires only that a motion for class certification be filed. It does not require that it meet any certain standard."

¶ 14    Ballard then filed an amended motion for class certification, stating, "Having conducted discovery, Plaintiff has revised and limited the Class Definition from that included in its original motion for Class Certification ***." According to Ballard, discovery showed that Kohll's had contracted with a list service provider known as Red Door Marketing to purchase thousands of fax numbers of businesses located throughout the United States. Discovery also showed that Kohll's sent its "Corporate Flu Shots Blast Fax" to 4,760 fax numbers on the list, and 4,142 of those fax transmissions were successful. A Westfax invoice for services performed on March 3, 2010, indicates exactly which transmissions were successful. Based upon these facts, Ballard submitted the following proposed class definition: "(a) all parties (b) who, on or about March 3, 2010, (c) were sent advertising faxes by Defendant (d) and with respect to whom Defendant cannot provide evidence of consent or a prior business relationship."

¶ 15    On April 15, 2013, the trial court granted Ballard's motion and certified the above class. Kohll's now appeals this certification order. See Ill. S. Ct. R. 306(a)(8) (eff. Feb. 16, 2011) (allowing permissive interlocutory appeals from orders granting class certification).

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, Kohll's argues that class certification was improper under section 2-801 of the Code of Civil Procedure (735 ILCS 5/2-801 (West 2010)), which sets forth the prerequisites for the maintenance of a class action. Under section 2-801, an action may only be maintained as a class action if the following conditions are met: (1) numerosity (the class is so numerous that the joinder of all members is impracticable); (2) commonality (there are common questions of law and fact among the members of the class that predominate over individual issues); (3) adequacy of representation (the representative party will fairly and adequately protect the interest of the class); and (4) appropriateness (a class action is a fair and efficient way to adjudicate the controversy). *Id.* The plaintiff bears the burden of establishing these prerequisites, and the court must find them present before it sanctions the maintenance of an action as a class action. *McCabe v. Burgess*, 75 Ill. 2d 457, 463-64 (1979). We review the trial court's decision to certify a class for an abuse of discretion. *Avery v. State Farm Mutual*

*Automobile Insurance Co.*, 216 Ill. 2d 100, 125-26 (2005); *Walczak v. Onyx Acceptance Corp.*, 365 Ill. App. 3d 664, 673 (2006).

¶ 18    In this appeal, Kohll's does not challenge the element of numerosity, but it does challenge the elements of commonality, adequacy of representation, and appropriateness. We consider Kohll's arguments in turn.

¶ 19                                      A. Commonality

¶ 20    Kohll's first contention is that the trial court abused its discretion in finding that common questions of law and fact predominate over individual issues. Kohll's identifies two issues of fact which, it argues, are not common to all class members but must be determined on an individual basis. First, Kohll's argues that it has not been demonstrated that all class members did not consent to the fax in question. Second, Kohll's speculates that some of the unsolicited fax transmissions may have been diverted to computers and never physically printed. If that were the case, according to Kohll's, the sending of the faxes would not be a TCPA violation, and it also would not constitute conversion, insofar as no paper and ink would have been used.

¶ 21    "The test for predominance is not whether the common issues outnumber the individual ones, but whether common or individual issues will be the object of most of the efforts of the litigants and the court." *Smith v. Illinois Central R.R. Co.*, 223 Ill. 2d 441, 448-49 (2006). As long as common questions predominate, the existence of individual issues will not defeat class certification. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 19 (1981) (citing *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 340-41 (1977) ("No doubt there will be situations where there may be questions peculiar to certain members of the class. However, once there is a determination that there exists a question of fact or law common to the class and that this predominates the question affecting only individual members, the statute is satisfied.")). For this reason, "commonality and typicality are generally met where, as here, a defendant engages in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct." *Hinman v. M&M Rental Center, Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008) (in fax blast case, holding that "[t]he possibility that some of the individuals on the list may separately have consented to the transmissions at issue is an insufficient basis for denying certification").[1] Moreover, " 'the hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action.' " *Miner*, 87 Ill. 2d at 20 (where plaintiff's claim was predicated upon a series of essentially identical transactions by thousands of class members, and the individual questions postulated by defendant were "mere hypotheticals," such hypotheticals did not bar the action (quoting *Harrison Sheet Steel Co. v. Lyons*, 15 Ill. 2d 532, 538 (1959))).

¶ 22    In this case, there are significant common issues of fact and law pertaining to all class members. The record shows that Kohll's contracted with a list service provider known as Red Door Marketing to purchase thousands of fax numbers of businesses, and it then engaged a third party to send the fax at issue to over 4,000 numbers on this list. Thus, the manner in which Kohll's identified these recipients will not require individualized inquiry. It is apparent that

---

[1]*Hinman* dealt with class certification under Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23). Section 2-801 is patterned after Rule 23, and federal decisions interpreting Rule 23 are persuasive authority with regard to the question of class certification in Illinois. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 125 (2005).

Kohll's "engage[d] in a standardized course of conduct vis-a-vis the class members, and plaintiffs' alleged injury arises out of that conduct" (*Hinman*, 545 F. Supp. 2d at 806). See *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 647 (W.D. Wash. 2007) (commonality requirement was satisfied where defendant "engaged in a common course of conduct" by purchasing recipients' fax numbers from a database and then sending the same fax transmission to all recipients within a short period of time). Common questions include whether the fax was an "advertisement" under the TCPA and whether Kohll's acts were willful or knowing. See *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) ("Class certification is normal in litigation under § 227, because the main questions, such as whether a given fax is an advertisement, are common to all recipients.").

¶ 23    Notwithstanding the foregoing, Kohll's contends that outstanding issues of consent should prevent class certification, since it is possible that some of the class members either consented to receive advertisements from Kohll's or had an existing business relationship with Kohll's. If that were the case, according to Kohll's, there would be no TCPA violation with respect to those class members. Ballard disagrees, arguing that consent and existing business relationship are not defenses in this case because Kohll's failed to provide an opt-out notice that fully complies with section 227(b)(2)(D) of the TCPA.

¶ 24    To resolve this issue, we need to take a closer look at the statutory language in question. The TCPA prohibits the sending of an "unsolicited advertisement" to a "telephone facsimile machine" unless the sender has consent or an established business relationship with the recipient and the advertisement contains an opt-out notice "meeting the requirements under paragraph (2)(D)." 47 U.S.C. § 227(b)(1)(C)(iii) (2006). The statute itself does not expressly require that an opt-out notice be included in solicited or consented-to fax advertisements. However, the most pertinent regulation in this case extends the opt-out notice requirement to solicited fax advertisements, stating: "A facsimile advertisement that is sent to a recipient that has provided prior express invitation or permission to the sender must include an opt-out notice that complies with the requirements in paragraph (a)(4)(iii) of this section." 47 C.F.R. § 64.1200(a)(4)(iv) (2013). Under this regulation, courts have held that, even where the TCPA permits fax advertisements because of consent or an established business relationship, such faxes must still contain opt-out information that complies with federal regulations. *Ira Holtzman*, 728 F.3d at 683 (stating that "[defendant's] faxes did not contain opt-out information, so if they are properly understood as advertising then they violate the Act whether or not the recipients were among [defendant's] clients"); *Nack v. Walburg*, 715 F.3d 680, 685 (8th Cir. 2013) ("the regulation as written requires the senders of fax advertisements to employ the above-described opt-out language even if the sender received prior express permission to send the fax").

¶ 25    The requirements for a valid opt-out notice are as follows:

> "A notice contained in an advertisement complies with the requirements under this paragraph only if–
>
> > (A) The notice is clear and conspicuous and on the first page of the advertisement;
> >
> > (B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines *and that failure to comply, within 30 days, with such a*

*request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;*

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes–

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address \*\*\*." (Emphasis added.) 47 C.F.R. § 64.1200(a)(4)(iii) (2013).

See also 47 U.S.C. § 227(b)(2)(D)(ii) (2006) (an opt-out notice is only valid if the notice states that it is unlawful not to comply with a list removal request "within the shortest reasonable time, as determined by the Commission").

¶ 26   In the present case, Kohll's provided an opt-out notice on its fax, but that opt-out notice did not fully comply with the requirements listed above. Kohll's opt-out notice stated, "If you have received this information in error or if you are requesting that transmissions cease in the future, please notify the sender to be removed as the recipient of future transmissions." It also provided contact information by fax, phone, and email. However, it did not state that failure to comply with a list removal request within 30 days was unlawful, as required by subsection (b) quoted above. Thus, we agree with Ballard that the opt-out notice provided by Kohll's did not strictly comply with federal law, and, as such, the fax would appear to be a TCPA violation even if Kohll's had consent or a prior business relationship with some of the class members. See 47 C.F.R. § 64.1200(a)(4)(iv) (2013).

¶ 27   Moreover, in any event, we note that Kohll's does not positively assert that it had consent or an established business relationship with any of the parties to whom it sent the fax; it only speculates that such factors might potentially exist. Nothing in the record indicates that either Kohll's or anyone acting on its behalf obtained consent from, or had an established business relationship with, any of the recipients of its fax blast. On the contrary, when asked in interrogatories about the issue of consent, Kohll's stated: "We don't know if consent was received. We purchased the list [of fax numbers] from Red Door Marketing \*\*\*. Red Door Marketing was the entity who processed information relating to the advertising faxes that existed. We are unaware of the lists that Red Door maintains." Based upon this statement, it would appear that Kohll's arguments with regard to consent are merely speculative and not grounded in facts. " '[T]he hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action.' " *Miner*, 87 Ill. 2d at 20 (quoting *Harrison Sheet Steel*, 15 Ill. 2d at 538); see *Hinman*, 545 F. Supp. 2d at 806 (requirement of commonality is typically met where a defendant engages in a standardized course of conduct toward all class members and the alleged injury arises from that conduct). Thus, we cannot say that the trial court abused its discretion in finding that the merely hypothetical issues of consent raised by Kohll's were insufficient to preclude class certification. See *id.* at 807 (in "fax blast" case, hypothetical possibility that some recipients might have consented to the transmissions at issue was insufficient to prevent class certification); see also *Display South, Inc. v. Express Computer Supply, Inc.*, 2006-1137, p. 10 (La. App. 1 Cir. 5/4/07); 961 So. 2d 451 (in TCPA case, rejecting defendant's argument that possibility of existing business relationship with fax

recipients should preclude class certification, since "the fact that some plaintiffs may offer a defense does not prohibit certification of a class").

¶ 28    Kohll's second contention with regard to commonality is that some of the class members may have received the fax transmission in the form of an email instead of physically printing it out. Kohll's argues that any such class members would not have a valid claim under the TCPA, since a computer is not a "telephone facsimile machine" within the meaning of the TCPA. Kohll's additionally argues that such class members would not have a valid claim for conversion of ink and paper.

¶ 29    With regard to the TCPA, the relevant statutory language is as follows:

> "(b) Restrictions on the use of automated telephone equipment.
>
> (1) Prohibitions.
>
> It shall be unlawful for any person within the United States ***
>
> * * *
>
> (C) to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement *to a telephone facsimile machine ***.*" (Emphasis added.) 47 U.S.C. § 227 (2006).

The TCPA defines a "telephone facsimile machine" as

> "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." 47 U.S.C. § 227(a)(3) (2006).

As Ballard points out, the statute does not make physical printing an element of the offense; it only requires that an unsolicited advertisement be sent to a "telephone facsimile machine." As for whether a computer constitutes a "telephone facsimile machine" within the meaning of the TCPA, we note that, in the hypothetical scenario envisioned by Kohll's, the computers at issue must have been set up in order to receive electronic signals over a telephone line, so that they could convert Kohll's fax into an email. We also note that, in the context of the modern office, most computers are connected to printers which can transcribe text or images received via email onto paper. A strong argument could be made that a computer that is used to receive fax transmissions is a telephone facsimile machine for TCPA purposes, at least with regard to any fax transmissions that it actually receives.

¶ 30    In support of its argument that a computer is not a telephone facsimile machine, Kohll's relies primarily on *Aronson v. Bright-Teeth Now, LLC*, 2003 PA Super 187, in which the court held that the sending of unsolicited commercial emails was not a violation of the TCPA. However, *Aronson* is distinguishable from the instant case because it did not involve fax transmissions in any form. The *Aronson* plaintiff received six "spam" emails from the defendant and brought suit under the TCPA, seeking $9,000 in statutory damages. *Id.* ¶ 2. Under these facts, the court held that plaintiff's computer was not a telephone facsimile machine and plaintiff did not have a valid TCPA claim. *Id.* The *Aronson* court did not purport to address the scenario proposed by Kohll's in this case, where a computer is set up to receive fax transmissions in lieu of a traditional fax machine and, in fact, does receive those transmissions.

¶ 31    More persuasive is the Seventh Circuit decision in *Ira Holtzman*, 728 F.3d 682. In that case, defendant was sued under the TCPA for sending over 8,000 unsolicited advertising faxes.

*Id.* at 683. The trial court certified a class of the faxes' recipients and subsequently granted summary judgment for plaintiffs. *Id.* at 684. On appeal, the court rejected defendant's argument that each recipient would have to prove that he actually printed the fax in question or otherwise suffered monetary loss. The court explained:

> "[Defendant] is wrong on the law. The statute provides a $500 penalty for the annoyance. [Citation.] Even a recipient who gets the fax on a computer and deletes it without printing suffers *some* loss: the value of the time necessary to realize that the inbox has been cluttered by junk." (Emphasis in original.) *Id.* (citing 47 U.S.C. § 227(b)(3)(B) (2006)).

Likewise, in the instant case, class members who received Kohll's fax by email would not automatically be barred from recovery under the TCPA.

¶ 32        Moreover, even if we were to agree with Kohll's that a computer used to receive faxes is not a telephone facsimile machine, the mere unsupported possibility that some class members *might* have received Kohll's fax by email is an insufficient basis for denying class certification. As discussed earlier, as long as common issues predominate over individual ones, class certification is proper notwithstanding the hypothetical existence of individual issues. *Miner*, 87 Ill. 2d at 20 (where plaintiff's claim was predicated upon a series of essentially identical transactions by thousands of class members, and the individual questions postulated by defendant were "mere hypotheticals," such hypotheticals did not bar the action); *Harrison Sheet Steel Co.*, 15 Ill. 2d at 538 ("Where it appears that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a minor character should be required to bar the action."). In this case, where Kohll's contracted with a third party to send a "fax blast" to over 4,000 numbers on a purchased list, we cannot say that the trial court abused its discretion in finding that the requirement of commonality has been met. See *Ira Holtzman*, 728 F.3d at 684 (class certification is "normal" in TCPA actions because "the main questions *** are common to all recipients"); *Hinman*, 545 F. Supp. 2d at 806 (element of commonality was met in TCPA case because defendant "engage[d] in a standardized course of conduct vis-a-vis the class members").

¶ 33                                             B. Appropriateness

¶ 34        Kohll's next contends that the trial court abused its discretion in finding that a class action lawsuit is a fair and efficient way to adjudicate this controversy, where the putative class consists of parties who received a one-page fax over three years ago. Kohll's additionally argues that class certification is inappropriate for TCPA actions generally because Congress, in enacting the TCPA, did not intend for class action lawsuits to be used as a means of enforcement.

¶ 35        In deciding whether a class action lawsuit is an appropriate way to adjudicate a controversy, courts consider whether it (1) serves the economies of time, effort, and expense, (2) prevents possible inconsistent results, and (3) otherwise accomplishes the ends of equity and justice. *Gordon v. Boden*, 224 Ill. App. 3d 195, 203 (1991); *Society of St. Francis v. Dulman*, 98 Ill. App. 3d 16, 19 (1981). Courts' consideration of these factors often mirrors the analysis of the other section 2-801 elements, particularly the elements of numerosity and commonality. *Clark v. TAP Pharmaceutical Products, Inc.*, 343 Ill. App. 3d 538, 552 (2003) (citing *Steinberg*, 69 Ill. 2d at 339); *Gordon*, 224 Ill. App. 3d at 203. Where a class is numerous and common questions of fact and law predominate, it is more efficient to address the common

issues in a single action instead of litigating each individual case separately. *Clark*, 343 Ill. App. 3d at 552; see *Fakhoury v. Pappas*, 395 Ill. App. 3d 302, 316 (2009) ("Certainly having one common complaint rather than thousands of separate complaints considering the same issue promotes the economics of time, effort, expense and uniformity over requiring thousands of complaints.").

¶ 36    In this case, as discussed above, Kohll's sent a "fax blast" to over 4,000 fax numbers on a purchased list. Courts have regularly recognized that class action lawsuits are an appropriate way of resolving TCPA cases involving blast faxing using purchased lists, because it serves the ends of judicial economy and uniformity. For instance, in *Hinman*, 545 F. Supp. 2d at 804, the defendant sent one-page fax "flyers" en masse to companies whose fax numbers were on a purchased list. The *Hinman* court certified a class of the fax recipients, explaining that class certification was appropriate because "resolution of the issues on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources." *Id.* at 807; see also *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (certifying class in TCPA suit where defendant contracted with a third party to send a fax broadcast to several thousand fax numbers); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) (same); *Lampkin v. GGH, Inc.*, 2006 OK CIV APP 131, ¶ 33, 146 P.3d 847 (trial court abused its discretion in denying class certification in TCPA case; class action was superior method of adjudicating controversy because, if the class members pursued their claims individually, it would "unduly and unnecessarily clog the judicial system of this state" (internal quotation marks omitted)); *Kavu*, 246 F.R.D. 642; *Display South, Inc.*, 2006-1137 (La. App. 1 Cir. 5/4/07); 961 So. 2d 451.

¶ 37    Kohll's nevertheless argues that certification is inappropriate under the facts of this case, where the putative class consists of parties who received a one-page fax over three years ago. Kohll's argues that this is problematic for three reasons. First, potential plaintiffs may not recall whether or not they received such a fax. Second, and relatedly, it is possible that parties who did not actually receive a fax but were on the fax blast list will lie about receipt in order to recover monetary damages. Third, according to Kohll's, the only way to include potential plaintiffs in the class will be to send out unsolicited faxes to the numbers listed on the alleged "fax blast" list to notify them of the existence of the litigation. Kohll's acknowledges that such faxes would not violate the TCPA, since they are not advertisements, but it argues that the irony of sending such faxes is "inescapable."

¶ 38    With regard to Kohll's first two objections, we find that the problems of proof are not nearly as dire as Kohll's suggests. On the contrary, the record reflects that, after Kohll's hired Westfax to send the fax transmissions at issue, Westfax sent Kohll's an invoice for services and a detailed report indicating exactly which 4,760 numbers the fax was sent to and which of those transmissions were successful. Because the 4,142 successful transmissions are specifically identified, Kohll's concerns about proof would seem to be misplaced. See *Ira Holtzman*, 728 F.3d at 684 ("To the extent [defendant] contends that each recipient must prove that his fax machine or computer received the fax, he is right on the law but wrong on the facts. The record establishes which transmissions were received and which were not.").

¶ 39    As for Kohll's concern about having to send unsolicited faxes to class members to notify them that they are part of the class, although the irony of the situation is not lost on us, we do not find this to be a sufficient reason to deny class certification. This same problem would tend

to arise in all TCPA class action lawsuits involving fax blasts sent to purchased lists, and, as noted, courts routinely certify classes in such cases. See, *e.g.*, *Hinman*, 545 F. Supp. 2d at 807. We also note that Ballard asserts that it has the ability to determine a name and address associated with the "vast majority" of the class members' fax numbers, which, if true, would presumably remove the need to contact them via unsolicited faxes.

¶ 40    Kohll's final argument is that class certification is inappropriate for TCPA actions in general because Congress, in enacting the TCPA, did not intend for class action lawsuits to be used as a means of enforcement. As noted, the TCPA provides for statutory damages of $500 per violation, with treble damages for willful or knowing violations. 47 U.S.C. § 227(b)(3) (2006). Kohll's argues that, under this statutory scheme, its potential liability in a class action lawsuit would be a crippling sum that would dwarf the actual harm incurred by the class members, a result that Congress surely did not intend.

¶ 41    However, the legislative history of the TCPA belies the assertion that class action lawsuits in TCPA cases are against congressional intent. The TCPA was first enacted in 1991. In 2005, Congress amended the TCPA by enacting the Junk Fax Prevention Act of 2005 (JFPA) (47 U.S.C. § 609 (2006)). At the time the JFPA was enacted, there had been numerous class action lawsuits certified under the TCPA. See, *e.g.*, *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 50 P.3d 844 (Ariz. Ct. App. 2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. Ct. App. 2003). Nevertheless, Congress did not take any action to prohibit or narrow the scope of class action lawsuits under the TCPA.[2] It is therefore apparent that the legislature has acquiesced in courts' construction of the statute allowing for class action lawsuits. See *Charles v. Seigfried*, 165 Ill. 2d 482, 492 (1995) (where legislature acquiesces in judicial interpretation of statute, that interpretation "become[s] part of the fabric" of the statute and departure from that interpretation is tantamount to an amendment of the statute itself).

¶ 42    Moreover, we note that "[a]n award that would be unconstitutionally excessive may be reduced [citation], but constitutional limits are best applied after a class has been certified." *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) (citing *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003) (reversing excessively high damages award as a violation of due process)). Whether a reduction in damages to comply with due process is required, and how much, is in itself a classwide issue that should be resolved identically as to each class member. It is not a reason to deny class certification in the first instance. *Murray*, 434 F.3d at 954.

¶ 43    Therefore, for the foregoing reasons, we do not find that the trial court abused its discretion in finding a class action lawsuit to be a fair and efficient way to adjudicate this controversy.

---

[2]Many laws that authorize statutory damages also limit the aggregate award to any class. For example, the Fair Debt Collection Practices Act says that total recovery may not exceed "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B)(ii) (2006). The Truth in Lending Act has an identical cap. 15 U.S.C. § 1640(a)(2)(B) (2006) (substituting "creditor" for "debt collector"). However, Congress has chosen not to implement such a limit on actions under the TCPA.

¶ 44            C. Adequacy of Representation: Whether Ballard Is a "Pawn" of Its Counsel

¶ 45       Kohll's next contends that Ballard is not an adequate class representative because it is merely a "pawn" of its counsel, the law firm Edelman and Combs. In support, Kohll's argues that the deposition of Eli Pick, the former owner of Ballard and its corporate representative, shows that were it not for Ballard's attorneys, Ballard would have settled the litigation or accepted Kohll's tender. Ballard states that Kohll's allegations in this regard are "wholly unsupported, offensive and inappropriate" and further argues that there is no real evidence of impropriety which would disqualify Ballard as representative.

¶ 46       The purpose of the adequate representation requirement is to ensure that all class members will receive proper, efficient, and appropriate protection of their interests in the proceedings. *Cruz v. Unilock Chicago, Inc.*, 383 Ill. App. 3d 752, 778 (2008) (quoting *P.J.'s Concrete Pumping Service, Inc. v. Nextel West Corp.*, 345 Ill. App. 3d 992, 1004 (2004)); see also *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 810 (2007). To be an adequate class representative, the putative class action plaintiff must be a member of the class. *Id.* The plaintiff must not be seeking relief that is potentially antagonistic to nonrepresented members of the class (*Client Follow-Up Co. v. Hynes*, 105 Ill. App. 3d 619, 625 (1982)), and it must have the desire and ability to prosecute the claim vigorously on behalf of itself and the other class members (*Hall v. Sprint Spectrum L.P.*, 376 Ill. App. 3d 822, 833 (2007)). It is this last requirement which Kohll's contends is missing in the instant case. Kohll's argues that the testimony of Pick shows that Ballard lacks any true interest in prosecuting the claim aside from the desire of its counsel. We turn now to examine this testimony.

¶ 47       In his deposition, Pick testified that he worked for Ballard from 1978 until his retirement in May 2011, and he was the executive director of Ballard from 1991 onward. He stated that he recalled seeing Kohll's fax on his company fax machine. He picked it up and forwarded it to his law firm, Edelman and Combs, because it was an unsolicited fax and he had previously had discussions with Edelman and Combs about what to do with unsolicited faxes.

¶ 48       Pick stated that in his capacity as executive director of Ballard, he had filed "more than six" lawsuits alleging violations of the TCPA, although he could not remember the exact number. He stated that the decision to file these lawsuits was his "in conjunction with the review with counsel." He additionally stated that the ultimate decision belonged to him.

¶ 49       Pick testified that his goal in taking such action was twofold. First, he said, "I forwarded unsolicited faxes [to Edelman and Combs] so that I would stop receiving unsolicited faxes." He explained that he noticed a pattern that when Edelman and Combs contacted the companies that sent him unsolicited faxes, he never received additional faxes from those companies. Second, he said, "I wanted to recover the expenses that I had lost as a result of an unsolicited fax."

¶ 50       Counsel for Kohll's asked Pick what expenses Ballard incurred as a result of an unsolicited fax. Pick stated that the expenses consisted of paper, ink, and staff time to pick up the fax. He estimated that the expense incurred from Kohll's unsolicited fax amounted to "A few dollars." Counsel for Kohll's then asked, "I understand there's class allegations, but you would agree with me that $2,500 would more than adequately cover any damage done to Ballard Nursing Center itself?" Pick replied, "I would agree that $2,500 exceeded the cost that I incurred, yes." However, he went on to state, "Ballard was named as part of a class, so I don't know about the costs of everybody else who is involved in this."

¶ 51    Kohll's contends that this deposition testimony shows that Pick's only interest in the litigation was to recover expenses in receiving unwanted faxes, and, if not for his lawyers, he would have accepted Kohll's $2,500 settlement offer. We disagree. Initially, we note that, contrary to Kohll's contention, Pick did not say that he only sought to recover expenses; he also said that he wanted to deter companies from sending additional unwanted faxes to Ballard. More importantly, although Pick admitted that $2,500 would cover Ballard's own costs in receiving the unsolicited fax, he also expressed concern regarding the costs of the other class members who also received faxes from Kohll's. Pick also stated unequivocally that he was the one who made the ultimate decision to pursue litigation, though he made his decision after consultation with counsel. Based upon this testimony, we cannot say that Ballard is a mere "pawn" of its lawyers or that it lacks the desire and ability to prosecute the claim vigorously on behalf of itself and the other class members.

¶ 52    The sole authority that Kohll's cites on this point is the unpublished federal district court decision of *In re AEP ARISA Litigation*, No. C2-03-67, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008), where the court found the named plaintiff not to be an adequate representative because he was "merely a pawn of the class lawyers." See Fed. R. App. P. 32.1(a) (unpublished federal judicial decisions that were issued on or after January 1, 2007, may be cited in federal court). This case is readily distinguishable on its facts. The plaintiff in that case brought a class action lawsuit against his employer, alleging mismanagement of its employee retirement savings plan. *AEP ARISA*, 2008 WL 4210352, at *1. At a deposition, he revealed that he had not spoken with his lawyers since he initially contacted them three years earlier; he had never received a copy of the complaint and was largely ignorant of its contents; he had never received any status updates about the progress of the case; and he apparently did not even realize that he had agreed to serve as a class representative, based upon his statement that " 'I'm just a member of a class.' " *Id.* at *3-4. On these facts, the court found that he was not an adequate class representative. *Id.* at *5. However, the court also stressed that "the burden on a named plaintiff to establish that he or she is an adequate class representative is not high" and that "[w]ith even a minimal amount of consultation with his lawyer, [plaintiff] likely would have passed muster." *Id.* In the present case, Pick did not display any such ignorance as to the nature of his case or his role in it. Additionally, as noted, Pick stated that he, not his lawyers, made the ultimate decision to pursue litigation, and the rest of his deposition gives no reason for us to doubt that assertion. Thus, we cannot say that the trial court abused its discretion in rejecting Kohll's argument that Pick's deposition shows Ballard to be an inadequate class representative.

¶ 53            D. Adequacy of Representation: Whether Ballard's Claim Is Moot

¶ 54    Kohll's finally contends that Ballard's claim has been mooted by Kohll's tender of damages, such that Ballard is no longer an adequate class representative. As noted previously, on June 29, 2011, Kohll's tendered a check for the sum of $1,600 to Ballard. Ballard refused to accept that check. Kohll's subsequently tendered a check for $1,500 on June 5, 2012, and a check for $2,500 on June 28, 2012; both checks were similarly refused. Based upon these facts, Kohll's argues that Ballard's claim is now moot under *Barber*, 241 Ill. 2d at 456-57, which held that a named representative's claim is moot when the defendant tenders the relief requested prior to the filing of a motion for class certification. See also *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481, 484-86 (1984) (holding

same). Kohll's acknowledges that Ballard filed a "Motion for Class Certification" contemporaneously with its complaint on April 20, 2010, before any tender was made. Kohll's nevertheless contends, as it did before the trial court, that this was an incomplete "shell" motion that is insufficient to satisfy *Barber*. In response, Ballard makes three arguments: first, that *any* motion for class certification, regardless of its content or lack thereof, is sufficient to satisfy *Barber*; second, that Ballard's claims should not be considered moot where Ballard pursued certification with "sufficient diligence"; and third, that Kohll's tenders were insufficient to cover the full amount sought by Ballard in this action.

¶ 55    An issue is moot where no actual controversy exists between the parties or where circumstances render the court unable to grant effectual relief. *West Side Organization Health Services Corp. v. Thompson*, 79 Ill. 2d 503, 506-07 (1980). Because Kohll's mootness argument relies principally on our supreme court's decision in *Barber*, we begin with a discussion of that case.

¶ 56    In *Barber*, a passenger brought a class action lawsuit against an airline for charging her a baggage fee for a flight that had been canceled. *Barber*, 241 Ill. 2d at 452-53. Before the plaintiff had filed any class certification motion, the defendant refunded the baggage fee to her. *Id.* at 453. The trial court dismissed plaintiff's claim as moot, and the *Barber* court affirmed. *Id.* at 454, 460. The court stated the rule with regard to class certifications as follows:

> "[T]he important consideration in determining whether a named representative's claim is moot is whether that representative filed a motion for class certification prior to the time when the defendant made its tender. [Citations.] Where the named representative has done so, and the motion is thus pending at the time the tender is made, the case is not moot, and the circuit court should hear and decide the motion for class certification before deciding whether the case is mooted by the tender." *Id.* at 456-57.

The court explained that the reason for this rule is that "a motion for class certification, while pending, sufficiently brings the interests of the other class members before the court 'so that the apparent conflict between their interests and those of the defendant will avoid a mootness artificially created by the defendant by making the named plaintiff whole.' " *Id.* at 457 (quoting *Susman v. Lincoln American Corp.*, 587 F.2d 866, 870 (7th Cir. 1978)).

¶ 57    Although *Barber* does not explicitly set forth requirements for a valid motion for class certification, such requirements are implicit in the reasoning behind its holding. If the purpose of a motion for class certification is to "sufficiently bring[ ] the interests of the other class members before the court" (*Barber*, 241 Ill. 2d at 457), then, in order to satisfy *Barber*, a motion must contain sufficient factual allegations so that it does, in fact, bring the interests of the other class members before the court. Otherwise, the court has no basis upon which to determine whether an actual controversy exists between the other class members and the defendant, as would avoid mooting the issue. See *West Side*, 79 Ill. 2d at 506-07.

¶ 58    This reading of *Barber* is consistent with our supreme court's general approach to class certification motions. In *Weiss v. Waterhouse Securities, Inc.*, 208 Ill. 2d 439, 453 (2004), the court stated that a class certification motion "is typically brought by a putative class action plaintiff, who asks the court, *based on evidentiary materials adduced through discovery*, to find that the case can proceed as a class action." (Emphasis added.) See also *P.J.'s Concrete Pumping Service*, 345 Ill. App. 3d at 1001 ("Class certification issues are typically factual and should be decided with the benefit of discovery."). Because of this, the showing that a plaintiff must make in a class certification motion is higher than the showing that he must make to

- 14 -

withstand a motion to strike class allegations under section 2-615 (750 ILCS 5/2-615 (West 2012)). *Weiss*, 208 Ill. 2d at 453. It would appear from this distinction that the *Weiss* court did not contemplate a class certification motion filed contemporaneously with the complaint and with no factual allegations in support of certification. Rather, it seems that the *Weiss* court anticipated that the parties would be allowed some time for discovery before the filing of any class certification motion.

¶ 59     Moreover, if a putative class action plaintiff could circumvent the holding of *Barber* merely by filing a contentless "shell" motion for class certification contemporaneously with its complaint, then it would effectively eviscerate the *Barber* decision. See *Toothman v. Hardee's Food Systems, Inc.*, 304 Ill. App. 3d 521, 534 (1999) ("We will not interpret supreme court precedent in such a way that any portion of the decision becomes meaningless."). Accordingly, based upon the foregoing, we reject Ballard's contention that any motion for class certification, regardless of its contents or lack thereof, is sufficient to satisfy *Barber*.

¶ 60     Turning now to the facts of the present case, we find that Ballard's April 20, 2010, "Motion for Class Certification" was insufficient to "bring[ ] the interests of the other class members before the court" under *Barber*. *Barber*, 241 Ill. 2d at 457. That motion was filed contemporaneously with the complaint, before any discovery had taken place and before Ballard had any knowledge of the class. Indeed, at that point in the litigation, Ballard had no evidence that other class members even existed, other than speculation based on the nature of the one-page fax it received. Its motion was entirely devoid of any factual allegations in support of class certification. Although it stated that "[p]laintiff will file a supporting Memorandum of Law in due course," Ballard never filed any such motion. It additionally never presented its motion to the court or set a hearing date on that motion, and, in fact, the court did not rule upon the issue of certification until nearly three years later. Under these facts, we find that, at the time Kohll's made its tender of $2,500, Ballard had not yet filed a motion for class certification within the meaning of *Barber*.

¶ 61     Ballard's second contention is that its claims should not be considered moot because it pursued class certification with "sufficient diligence." It asserts that, despite repeated delay and refusal to cooperate on the part of Kohll's, Ballard diligently pursued and obtained the discovery necessary to present the court with a proper motion for class certification in November 2012. However, the *Barber* court explicitly rejected the notion that a plaintiff's diligence in pursuing class certification will prevent its claim from being mooted if a valid tender is made prior to a motion for class certification. *Barber*, 241 Ill. 2d at 459. In that case, the plaintiff alleged that defendant's tender was an unfair attempt to "pick off" her claim in order to avoid a class action. *Id.* at 455. She argued that the court should apply a "pick off" exception, under which a plaintiff who fails to move for class certification prior to a defendant's tender may nevertheless pursue class certification if the plaintiff has exercised reasonable diligence in that regard. *Id.* The *Barber* court disagreed, stating that the "pick off" exception "has no basis in the law" and instructing that language in prior appellate decisions relying on the "pick off" exception not be cited. (Internal quotation marks omitted.) *Id.* at 458; see *Gatreaux v. DKW Enterprises, LLC*, 2011 IL App (1st) 103482, ¶ 21 (reiterating *Barber*'s rejection of the "pick off" rule). Accordingly, we must reject Ballard's contention that its alleged diligence prevents its claim from being mooted by Kohll's tender.

¶ 62     Ballard's final contention is that the sums tendered by Kohll's were insufficient to cover the full relief requested by Ballard in its complaint. In its three-count complaint, Ballard sought

- 15 -

statutory damages under the TCPA (count I), actual damages and attorney fees as permitted for violation of the Consumer Fraud Act (count II), and damages for conversion (count III). Ballard does not contest that the $2,500 tendered by Kohll's is sufficient to satisfy count I, but it argues that the amount does not satisfy counts II and III, particularly the Consumer Fraud Act's provision of attorney fees for prevailing plaintiffs. See *Clayton v. Planet Travel Holdings, Inc.*, 2013 IL App (4th) 120717, ¶ 26 (award of attorney fees is allowable under Consumer Fraud Act).

¶ 63    Kohll's does not challenge this assertion. Indeed, at oral argument before this court, counsel for Kohll's conceded that its tender only pertained to count I of the complaint and did not cover counts II and III. This is consistent with Kohll's stance before the trial court, since, after tendering payment to Ballard, Kohll's moved for partial summary judgment on count I of the complaint but did not seek summary judgment on the other two counts.

¶ 64    Based upon the foregoing, we agree with Ballard that Kohll's tender only mooted Ballard's claims with respect to count I of its complaint, which leaves Ballard as an adequate class representative with regard to counts II and III. We therefore reverse the trial court's class certification insofar as it pertains to count I, but we affirm in all other respects. Upon remand, we direct the trial court to revisit the issue of class certification in light of the fact that only counts II and III remain.

¶ 65    Affirmed in part and reversed in part; cause remanded with directions.